# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

EDUARDO ALICEA-TORRES,

  Petitioner,

   v.

UNITED STATES OF AMERICA,

  Respondent.

CIVIL NO. 05-1544 (DRD)
Related to Crim. No. 97-076 (DRD)

## UNITED STATES' RESPONSE TO PETITIONER'S
## MOTION UNDER 28 U.S.C. § 2255

**TO THE HONORABLE COURT:**

  COMES NOW, the United States of America through the undersigned attorneys and to this Honorable Court it is very respectfully alleged and prayed as follows:

  Petitioner, Eduardo Alicea-Torres, has requested relief from his judgment of conviction. He basically claims that he was denied effective assistance of counsel because his attorney failed to: (1) file certain motions with the court, object to the admission of evidence or request jury instructions; (2) adequately explain to him the Sentencing Guidelines or pursue plea negotiations; (3) exclude jurors, call witnesses to testify or conduct an adequate investigation (Motion, at pp. 5-23). Additionally, Alicea-Torres asserts that his appellate counsel (same as trial counsel) failed to raise issues on direct appeal that should have been raised, including the fact that the

sentencing court applied an upward departure based on murders not charged in the

Indictment, nor determined by the jury beyond a reasonable doubt (Motion, at pp. 24-

25).  Finally, relying on United States v. Booker, 125 S. Ct. 738 (2005), he claims he

was denied his Sixth Amendment right to a trial because the jury did not make any

specific finding as to the type or quantity of drugs or other enhancements, and instead

the district court made evidentiary findings based on a preponderance of the evidence

(Motion, at pp. 25-28).

Although Alicea-Torres alleges 20 different claims of ineffectiveness, almost

none of the claims are developed with any substance, nor does he cite to the record or

to the trial transcript.  Alicea-Torres's other claims are similarly undeveloped, without

merit, or not entitled to attack on collateral review.

## Background

On April 10, 1997, a Grand Jury returned a two count indictment against

Alicea-Torres and 21 other co-defendants (D.E. 1).  On December 14, 1998, a

superseding indictment was returned adding another defendant to the case - the

charges remained the same (D.E. 397).  As relevant to this petition, Count Two

charged that from on or about January 1, 1990, and continuing until on or about

March 7, 1994, in the District of Puerto Rico and elsewhere, the defendants conspired

to distribute multi- kilogram quantities of controlled substances, that is: in excess of

2

five (5) kilograms of heroin, in excess of five (5) kilograms of cocaine, in excess of five (5) kilograms of cocaine base, and in excess of one hundred (100) kilograms of marihuana as prohibited by 21 U.S.C. §841(a), all in violation of 21 U.S.C. §846.

Eleven of the 22 defendants were tried before a jury from December 28, 1998 to June 25, 1999. The jury convicted all eleven defendants, including Alicea-Torres, on all counts with which they were charged. Alicea-Torres was sentenced to life imprisonment, and his conviction and sentence were affirmed in their entirety on direct appeal by the First Circuit. See, United States v. Soto-Beniquez, 356 F.3d 1 (1st Cir. 2003).

Trial Testimony

This case involved the prosecution of a violent street gang dedicated to the distribution of narcotics at six different drug points within the Bitumul Ward of Hato Rey, Puerto Rico. From on or about January 1, 1990, until on or about March 7, 1994, the defendants would purchase multi-kilogram quantities of heroin, cocaine and marihuana at wholesale prices. They would then cut, divide and package the narcotics in small vials or plastic baggies for subsequent sale to customers at drug points. Additionally, the defendants would also cook some of the cocaine purchased and create cocaine base ("crack cocaine"), which would also be packaged in vials for sale at drug points. The defendants would use residences and other locations to store

narcotics, cook cocaine into crack cocaine, and package the heroin, cocaine, crack cocaine and marihuana to be distributed at the drug points. In order to protect the sale of narcotics at the different drug points, the defendants possessed, carried and used firearms. These firearms were used to stand guard at the different drug points in order to protect the sales of narcotics, or to seek out and murder rival gang members who posed a threat to the drug distribution conspiracy.

Briefly, with respect to Alicea-Torres, the evidence at trial revealed the following facts regarding his involvement in the conspiracy: Eduardo Alicea-Torres, aka "Eggy," began his participation in the Bitumul drug trafficking organization in 1990 by selling narcotics at the drug points located at Cuba Street (TT, 1/19/99, p. 29; 1/21/99, p.130), which were controlled by co-defendants Soto-Ramírez and Soto-Beníquez. Alicea-Torres continued selling narcotics at the Cuba Street drug points until at least 1991. Later, Alicea Torres began his own drug point. Main government witness Víctor Negrón-Maldonado, aka " Pitosito", cooked crack for Alicea Torres (TT, 1/21/99, p.62; 1/25/99, p. 43).

The evidence demonstrates that Alicea-Torres participated in various murders to protect the drug distribution conspiracy. On February 20, 1991, Soto-Ramírez , Alicea-Torres and others, killed police agent Efraín Hernández-De León and government informant Ana Luz Dones Arroyo, aka "La Gallega," as La Gallega

attempted to lead the agent to the storage location of firearms in Alley No. 2 of the Bitumul Ward.  Soto- Ramírez was alerted, he went after them with a .45 weapon and stopped the car.  He grabbed La Gallega by the hair and fired at least one shot to her head.  Numerous other shots were fired by Soto-Ramírez, Alicea-Torres and others.  Alicea-Torres and another conspirator then dragged the police agent away and killed him as well.  He was taken to a levy by Bitumul, run over with a car twice and his body abandoned. Afterwards, Soto-Ramírez hid the participants in a house in Puerto Nuevo, while Bitumul was "hot" following the killings (TT, 1/21/99, pp.52-60; 3/10/99, p. 64).

Sentencing Hearing

The first sentencing hearing was held on January 20, 2000.  At that hearing, the court heard argument regarding the applicable base offense level for drug quantity. Defense counsel argued that although there may have been evidence that the conspiracy as a whole conspired to sell 150 kilograms of cocaine, the evidence did not establish that such amount was foreseeable to Alicea-Torres (SHT 01/20/00, at pp. 3-10).  The court rejected this argument on two grounds.  First, cooperating witness Luis Torrens-Alicea testified that in 1993, Juan Antonio López, also known as El Bebo, stole a shipment of cocaine in excess of 200 kilograms in the area of Fajardo and brought it to Bitumul.  The evidence revealed that Alicea-Torres aided and abetted in

distributing the drugs.  Second, cooperator Víctor Negrón-Maldonado, a/k/a/ Pitocito,

testified that he cooked kilograms of cocaine base frequently at Bitumul and turned

it into crack cocaine.  One of the individuals who distributed the crack was Alicea-

Torres (Id. at pp. 9-10, 33-34).  Thus, the court determined that the base offense level

was 38 (Id.; See, U.S.S.G. §2D1.1).  However, based on the nature of the offense,

wherein a victim was killed under circumstances that would constitute murder under

Title 18 U.S.C. §1111, the court determined that the cross-reference contained in

U.S.S.G. §2D1.1(d)(1) required the application of U.S.S.G. §2A1.1, providing for a

base offense level of  43 (SHT 01/20/00, at pp. 37-38; PSR, at p. 6, ¶17).  With a

criminal history category of II, the Guidelines mandated a sentence of life

imprisonment, which the district court imposed (Id. at p. 38; PSR, at p. 8, ¶30).

Judgment was subsequently entered (D.E. 1134).

Thereafter, the district court determined that the life imprisonment mandated

under U.S.S.G. §2D1.1(d)(1) should not be applied to Alicea-Torres (SHT 02/28/00,

at p. 2).  A new sentencing hearing was held on February 28, 2000 (D.E. 1196).

However, at the beginning of the hearing, the court instructed that it may depart

upward (SHT 02/28/00, at pp. 2-3).

At the sentencing hearing, defense counsel again argued that there was a dispute

as to drug quantity and that Alicea-Torres should not be held accountable for all of the

drugs (Id. at pp. 6-8).  The government opposed, arguing that the matter of drug quantity had been determined at the prior hearing (Id. at p. 8). The court agreed and concluded that a level 38 had been reached (Id. at pp. 8-9).

Although defense counsel also opposed the two-point weapons enhancement, the court stated that it was reasonably foreseeable that other co-defendants in the conspiracy used a weapon in connection with jointly undertaken criminal activity (Id. at pp. 9-13).  The government noted that, in fact, the evidence showed that Alicea-Torres personally possessed weapons in furtherance of the conspiracy (Id. at pp. 11-12).  The applicable guideline range with a total offense level of 40, and a criminal history category of II, was 324 to 405 months imprisonment (Id. at p. 13).

Defense counsel opposed the upward departure based on the "uncorroborated evidence tending to show murders," as that would amount to an injustice because he has not been found guilty of any violent crime, and was not charged with any of the murders that were introduced as evidence in the case (Id. at pp. 14-15, 18-19).  The government argued that an upward departure to life imprisonment was justified, and that there was evidence offered in the case to corroborate the testimony that Alicea-Torres was a member of the conspiracy that participated in the brutal murder of an undercover agent, an informant and also a man by the name of Heriberto Rivera González (Id. at pp. 15-18, 20-21).

Pursuant to U.S.S.G. §5K2.1, which permits an upward departure if death results from the defendant's criminal activity, the court departed upward one level in Alicea-Torres' criminal history category. This resulted in a guideline range of 360 months to life imprisonment. The court then sentenced Alicea-Torres to life imprisonment (Id. at pp. 23-24). A new judgment was entered (D.E. 1197).

## ARGUMENT

### A: Ineffective Assistance of Counsel

Alicea-Torres' motion is largely premised on his claim that his attorney provided ineffective assistance of counsel. Alicea-Torres lists and *very* briefly alleges twenty separate claims of ineffectiveness. He urges that any of those allegations, or the cumulative effective of them, demonstrate that his defense counsel was ineffective and that, therefore, his judgment should be vacated and a new trial ordered or, alternatively, that he should be re-sentenced.

In Strickland v. Washington, 466 U.S. 668, 687 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective. The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defense. Deficient performance will only be demonstrated if, considering all relevant circumstances, counsel's conduct or omissions fell below an objective standard of reasonableness and "outside the wide range of professionally

competent assistance." Strickland, 466 U.S. at 688, 690; Ouber v. Guarino, 293 F.3d 19, 25 (1st Cir. 2002).  In order to demonstrate prejudice, a defendant must show that a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694.

The defendant bears the burden of identifying the specific acts or omissions constituting the allegedly deficient performance. Conclusory allegations or factual assertions that are fanciful, unsupported or contradicted by the record will not suffice. Dure v. United States, 127 F.Supp.2d 276, 279 (D.R.I. 2001), citing Lema v. United States, 987 F.2d 48, 51-52 (1st Cir.1993); See also, Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir.1992) (summary dismissal of § 2255 motion is proper where, inter alia, grounds for relief are based on bald assertions).

The government will address each of Alicea-Torres's points of ineffectiveness separately.

1.    Failure to Move and Argue For Severance

Alicea-Torres claims that counsel should have filed a motion for an order severing his case from the co-defendants because his defense was mutually exclusive and antagonistic to co-defendants and, thus, the prejudicial impact far outweighed the benefit of prosecuting his case with the co-defendants (Motion, at p. 6).   He claims that as a result of that failure, he was deprived of favorable testimony from co-

defendants who invoked their Fifth Amendment rights, and that hearsay statements made by co-defendants were allowed into evidence but that he was not able to confront the source of the statements (Motion, at pp. 5-6).

Rule 14 of the FRCP allows a trial court to sever defendants when joinder would prejudice them. The default rule, however, is that defendants who are indicted together should be tried together. See, United States v. Pena-Lora, 225 F.3d 17, 33 (1st Cir. 2000); United States v. Pierro, 32 F.3d 611, 615 (1st Cir. 1994). Two of Alicea-Torres' co-defendants filed a motion for severance, arguing that the other defendants were more culpable/more senior and that the admission of murder evidence would prejudice them and confuse the jury. The motion was denied. On appeal, the First Circuit held that the district court did not abuse its discretion in denying the motion. See, Soto-Beniquez, 356 F.3d at 29-31.

Here, the evidence adduced at trial demonstrated that Alicea-Torres was one of the more culpable co-defendants. The fact that his co-defendants invoked their right to remain silent would not likely have changed even if Alicea-Torres was tried separately. In fact, Alicea-Torres has not offered a single shred of evidence that any of the co-defendants would have testified on his behalf at a separately held trial. As such, he has not shown any prejudice in that regard. Furthermore, Alicea-Torres has not explained how his defense to the murder evidence was mutually exclusive to the

other defendants, as they were all members of the conspiracy.    In that regard, the court instructed the jury that each defendant must be judged separately based on the evidence admissible against him.

Clearly, if the motion by the other co-defendants for severance was denied, the district court would have denied Alicea-Torres' motion as well, and that decision would have been affirmed on appeal.    It is well settled that counsel's failure or refusal to raise meritless issues cannot constitute ineffective assistance of counsel. See, Soto-Lara v. United States, 367 F.Supp. 189, 192 (D. Mass, 2005) ("Failure to raise a meritless legal argument falls well within this wide range of reasonable assistance and thus does not constitute ineffective assistance of counsel."); United States v. Victoria, 876 F.2d 1009, 1013 (1st Cir. 1989); United States v. Kimler, 167 F.3d 889, 892 (5th Cir. 1999).  Because a motion for severance would have been denied, and affirmed on appeal, the alleged failure of defense counsel to file a motion for severance cannot be deemed ineffective.  See, Acha v. United States, 910 F.2d 28 (1st Cir.1990) (nothing that counsel was under "no obligation" to raise meritless claims).

2.    Failure to Conduct Adequate Investigations

Aside from a general and entirely conclusory claim that counsel did not properly or adequately investigate his case by interviewing witnesses, visiting the crime scene and examining physical evidence, Alicea-Torres fails to offer the name

of a single witness that counsel failed to meet with, or any specific aspect of the case

that counsel did not adequately investigate (Motion, at p. 7).  Because this claim is

generic and not developed, it should be deemed waived and summarily rejected.  See,

United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation

to spell out its arguments squarely or distinctly, or else forever hold its piece.");

United States v. Bartelho, 129 F.3d 663, 674 (1st Cir. 1997); Romero Lama v. Borras,

16 F.3d 473, 481 n. 12 (1st Cir. 1994); Martinez-Cintron v. United States,  2005 WL

1961642, *1 (D.P.R. 2005); Lockhart v. United States, 2001 WL 34134341, *3 (D.R.I.

2001) (rejecting §2255 claims based on general, perfunctory statement which did not

specifically identify witnesses or evidence to support the same).  However, it should

be noted that counsel filed an urgent ex parte motion for authorization to appoint an

investigation (D.E. 400).  That motion was granted by the court and, as such, it is clear

that contrary to petitioner's allegations, counsel in fact conducted investigations (D.E.

471).

3.   Failure to Properly Explain the Sentencing Guidelines and Inform Alicea-
     Torres of Potential Sentence Exposure; Failure to Pursue Plea Negotiations or
     Advise Alicea-Torres of Proposed Plea Agreements Offered by the Government
     (Points 3 and 4 raised by Alicea-Torres).

In Point 3, Alicea-Torres claims that counsel told him that he was facing, at

most, 17-20 years imprisonment for the federal conspiracy drug charge, and that at no

time did counsel advise him that he may face a life sentence without parole based on

evidence that he participated in the murder of a police officer and a female government informant (Motion, at pp. 7-8). Additionally, he claims that counsel never instructed him that the sentencing judge had the ability to enhance his sentence based on a preponderance of the evidence standard related to facts not charged in the Indictment or determined by a jury (Id.). According to Alicea-Torres, had he been aware, he "may very well have seriously entertained pleading guilty to charges in a negotiated deal to receive BOL reduction for acceptance of responsibility" (Id. at p. 9).

Similarly, in Point 4, Alicea-Torres claims that he considered pleading guilty, but that his attorney did not effectively or diligently pursue plea negotiations, nor convey any actual proposed plea agreements (Motion, at p. 9). In that regard, he claims that he was not given the legal advice and knowledge needed to make a well informed decision about whether to plead guilty or face a jury trial. Alicea-Torres alleges that probably he would have pled guilty had he known the applicable sentencing exposure, the ability of the government to offer evidence of uncharged crimes, and the district court's power to make evidentiary findings based on a diminished burden of proof (Id.).

A plea offer letter was sent out to all the defendants, which expired on October 11, 1998. The plea offer given to Alicea-Torres provided for a base offense level of

38, a two-point enhancement for use of firearms, and a three-point reduction in his base offense level for acceptance of responsibility, for a total base offense level of 37 and a imprisonment range of 17 to 21 years (assuming a criminal history category of I).[1]  The United States agreed to a sentence of 20 years.  The offer also stated that if he proceeded to trial, the government would seek a two level upward adjustment for his role as a supervisor, for a total base offense level of 42, resulting in a guideline range of 30 years to life.   The United States would seek a sentence of life imprisonment.

Based on the plea offer, Alicea-Torres was undoubtedly aware of the potential exposure he faced if he proceeded to trial.  Additionally,  as evidenced by the criminal docket, the plea offer was discussed in open court and it was noted that the defendants were given until November 2, 1998, to accept the plea (D.E. 336).  Moreover, as defense counsel affirms in the accompanying declaration (see Attachment I), he notified Alicea-Torres of the government's plea offer, and thoroughly discussed the plea offer with him.  Alicea-Torres instructed his attoney to reject the government's offer.

Additionally, during the criminal proceedings, the government offered a package plea deal to all the co-defendants.  These offers were also discussed in open

---

[1]Alicea-Torres' criminal history category was later determined to be II, not I.

court. Again, Alicea-Torres chose to go to trial rather than plead guilty.

4.  Failure to Object to Unduly Prejudicial Evidence, or File a Motion Seeking Its Exclusion

Alicea-Torres asserts, without any citation to the record, that the government was allowed to proffer all sorts of highly inflammatory and unduly prejudicial evidence (Motion, at p. 10).  As with some of his other claims, because Alicea-Torres does not point to any specific evidence that his counsel failed to object to at trial, or should have moved to exclude, his claim is nothing more than bald assertions and should be summarily rejected.  See, Zannino, 895 F.2d at 17;  Martinez-Cintron,  WL 1961642, *1; Lockhart, 2001 WL 34134341, *3.

5.  Failure to Challenge, Object to and Preserve Government's Suppression of Material Evidence Favorable to Alicea-Torres

Alicea-Torres generally claims that counsel did not "challenge the government's collection, containment, handling, and suppression of certain evidence favorable" to him (Motion, at p. 10).  Not a single piece of this alleged evidence is named and, as such, this claim is perfunctory and should be deemed waived.  See, Zannino, 895 F.2d at 17; Martinez-Cintron,  WL 1961642, *1; Lockhart, 2001 WL 34134341, *3.  To the extent that this claim appears to indicate that counsel should have raised a prosecutorial misconduct argument, that issue is addressed in Point 9, *infra*.

15

6.  Failure to Exclude Jurors for Cause or Use Peremptory Challenges

According to Alicea-Torres, he requested counsel to remove at least three jurors based on an obvious expressed bias in favor of the prosecution and, thus, unable to render an impartial verdict (Motion, at p. 11).  The name, circumstances, nor answers to questions are not provided by Alicea-Torres and, thus, this claim should be deemed waived and summarily rejected.  See, Zannino, 895 F.2d at 17; Martinez-Cintron, 2005 WL 1961642, *1; Lockhart, 2001 WL 34134341, *3.

Moreover, a review of the jury selection transcripts reveal that numerous challenges were made to various jurors and that the court took adequate measures and inquired as to each potential juror's impartiality when a concern was raised.  As such, Alicea-Torres' claim is entirely conclusory and self-serving and should be rejected.

7.  Failure to Properly Cross-Examine Witnesses

Similar to his claim on direct appeal, Alicea-Torres urges that counsel failed to adequately cross-examine many of the government's witnesses and completely waived cross-examination of others (Motions, at p. 12). Alicea-Torres refers specifically to the testimony of Cesario-Soto relative to his activity in known drug areas and claims that if a "proper" cross-examination had been conducted there is a  "reasonable probability" that the jury would have concluded that either Cesario-Soto's, or the other government witness, Torrens-Alicea's, testimony was false (Id.).

16

The specific inquiry that should have been made of Cesario-Soto is not provided and, therefore, his claims should be rejected outright. However, it is significant that counsel's cross-examination of Cesario-Soto was addressed in the appellate decision by the First Court. On appeal, Alicea-Torres argued that the government knowingly offered in evidence perjured testimony from Cesario-Soto, who stated in an interview prior to trial that Alicea-Torres was in the area where drugs were sold. During that interview he did not state that he observed Alicea-Torres sell drugs at two different drug points, as he ultimately testified at trial. In addressing this argument, the Court stated as follows: Defense counsel cross-examined Cesario-Soto as to the supposed conflict between his testimony and the statement he made during the interview. See, Soto-Beniquez, 356 F.3d at 35. As such, it is clear that counsel's cross-examination was thorough and did not fall below the objective standard of reasonableness. See, United States v. Michaud, 925 F.2d 37, 41 (1st Cir. 1991).

8. Failure to Object to Prejudicial Hearsay Testimony

Alicea-Torres asserts that counsel allowed numerous witnesses to give hearsay, double hearsay, and triple hearsay without objecting or preserving any issue for appellate review (Motion, at p. 13). This testimony referred to other crimes not charged or necessarily related to the drug conspiracy allegations (Id.).

Without any specific citation to the actual hearsay statements, or any developed

17

argument, this claim should be summarily rejected.   However, assuming for the sake

of argument that Alicea-Torres' reference to "other crimes not charged" or testimony

not "necessarily related to the drug conspiracy," refers to the testimony offered

regarding the various murders, there was no ineffective assistance.   As the First

Circuit determined, it was not an abuse of discretion for the trial court to admit the

evidence regarding the various murders, as the evidence was admissible to

demonstrate the existence of a conspiracy and to demonstrate the motive for

subsequent overt acts in furtherance of the conspiracy.  See, <u>Soto-Beniquez</u>, 356 F.3d

at 31-33.   See, <u>United States v. Rodriguez</u>, 162 F.3d 135 (1st Cir. 1999) (evidence

that a number of co-conspirators beat up one suspected of being an informant, was

permissible to show an attempt to set a tone for their drug trafficking operation).  As

such, because the evidence was properly admitted, counsel cannot be deemed to be

ineffective for failing to raise a meritless issue.  See, <u>Soto-Lara</u>, 367 F.Supp. at 192.

9.  <u>Failure to Object to Prosecutorial Misconduct</u>

Contrary to Alicea-Torres' assertion, counsel did argue that the prosecutor

engaged in misconduct, and did pursue that issue on appeal as well.  However, even

if Alicea-Torres' counsel did not object to the alleged prosecutorial misconduct, as he

claims (Motion, at pp. 13-14), the First Circuit specifically addressed and rejected the

claims made by certain co-defendants that the district court should have dismissed the

18

indictment due to the government's habitual dilatoriness in turning over discovery material. <u>Soto-Beniquez</u>, 356 F.3d at 30-31. Additionally, several defendants urged that the prosecution's closing argument led to reversible error. See, <u>Soto-Beniquez</u>, 356 F.3d at 41-43. The Court rejected the claim that the prosecution's closing argument led to reversible error, finding beyond a reasonable doubt that the statements did not prejudice the defendants. <u>Id.</u> at p. 43.

Significantly, Alicea-Torres specifically argued on appeal that there were multiple <u>Brady</u> and <u>Giglio</u> violations by the government. <u>Id.</u> at 39-40. The court concluded, however, that the defendants were not prejudiced by the government's delay in revealing the information. <u>Id.</u> at 40. Additionally, counsel also argued that the government knowingly offered into evidence perjured testimony from Cesario-Soto. <u>Id.</u> at 34-35. Finding that the statements by the witness were not necessarily conflicting, and that other witnesses linked Alicea-Torres to the drug points, the court concluded that there is no reasonable likelihood that any false testimony could have affected the judgment of the jury. <u>Id.</u> at 34.

As such, because the prosecutorial misconduct claim was not meritorious on appeal, counsel cannot be deemed ineffective for failing to have raised every single instance of alleged misconduct. See, <u>Victoria</u>, 876 F.2d at 1013 (An attorney is not obliged to raise meritless claims and failure to do so does not render his or her legal

19

assistance ineffective).

10.  Denial of Right to Testify at Trial

Alicea-Torres claims he wanted to testify, but that he was told not to testify by his counsel, as well as by co-defendants and co-defendants' counsel because it would jeopardize his co-defendant's chances of acquittal (Motion, at pp. 14-15).  As such, he claims that his best interests were sacrificed for those around him who convinced him to forego his constitutional right to testify (Id.).

As affirmed by trial counsel in the accompanying declaration, Alicea-Torres was never told by counsel not to testify for the sake of his co-defendants.  Indeed, counsel does not recall Alicea-Torres ever requesting to take the stand in his own defense.

Moreover, Alicea-Torres must show that there is a reasonable probability that, but for his counsel's deficient performance, the outcome would have been different.  Strickland, 466 U.S. at 694; United States v. Hart, 933 F.2d 80, 83 (1st Cir. 1991); Carsetti v. Maine, 932 F.2d 1007, 1012 (1st Cir. 1991).  There is a strong presumption that counsel's performance comes within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689; Bucuvalas v. United States, 98 F.3d 652, 658 (1st Cir. 1996).  The defendant must overcome the presumption that his counsel's performance could be considered sound strategy.  Strickland, 466 U.S. at 689.  The

Court's scrutiny of the attorney's performance must be highly deferential. Id.; Bucuvalas, 98 F.3d at 658.

The United States submits that even if Alicea-Torres wanted to testify, but trial counsel convinced him not to testify, he cannot overcome the presumption that this decision was sound strategy. Indeed, there was overwhelming evidence of guilt offered at trial against Alicea-Torres. Specifically, the testimony demonstrated that Alicea-Torres, a/k/a "Eggy," began his participation in the Bitumul drug trafficking organization in 1990 by selling narcotics at the drug points located at Cuba Street (TT, 1/19/99, p. 29; 1/21/99, p.130), which were controlled by co-defendants Soto-Ramírez and Soto-Beníquez. Alicea-Torres continued selling narcotics at the Cuba Street drug points until at least 1991. Later, Alicea Torres began his own drug point. Main government witness Víctor Negrón-Maldonado, a/k/a " Pitosito", cooked crack for Alicea-Torres. TT, 1/21/99, p. 62; 1/25/99, p. 43. Cooperating witness Luis Torrens-Alicea also testified that in 1993, Juan Antonio López, also known as El Bebo, stole a shipment of cocaine in excess of 200 kilograms in the area of Fajardo and brought to Bitumul. The evidence revealed that Alicea-Torres aided and abetted in distributing those drugs.

As such, Alicea-Torres cannot possibly show that, but for his counsel's supposedly deficient performance in not allowing him to testify, the outcome of the

case would have been different if he had taken the stand in his own defense. The evidence at trial implicating him in the charged conduct was overwhelming.

11. Failure to Call Witnesses and Present Favorable Evidence

Allegedly, there are unnamed witnesses that counsel knew about, or should have known about, that were favorable to his defense and should have been presented to the jury (Motion, at p. 15). Alicea-Torres claims that he is in the process of identifying those individual and procuring affidavits from them but that he does not have the criminal file which hampered his ability to prepare his §2255 motion (Id.). Without any developed argument, the claim is perfunctory and cannot be addressed. The claim should be deemed waived. See, Zannino, 895 F.2d at 17; Martinez-Cintron, 2005 WL 1961642, *1; Lockhart, 2001 WL 34134341, *3.

12. Failure to Object to District Court's Constructive Amendment of Indictment

This allegation by Alicea-Torres is more of an assertion that the district court improperly charged the jury, rather than a claim of ineffective assistance of counsel. He asserts that the district court should not have instructed the jury that he could be found guilty of conspiracy if he conspired with *any* individuals, but should have required the jury to determine that his co-conspirators were those specifically named along with him in the Indictment (Motion, at pp. 16-17).

To the contrary, the court properly charged the jury regarding the elements of

the conspiracy offense (See, Court's Instruction #14).  Indeed, the court specifically instructed that in order to find the defendants guilty, the government had to prove, beyond a reasonable doubt, "that between on or about January 1, 1990, and on or about March 7, 1994, the agreement specified in the indictment, and not some other agreement or agreements, *existed between at least two people charged or named in the indictment* to distribute controlled substances."    As such, because the court's charge was entirely proper, there was no ineffective assistance of counsel.  In addition, this is a claim that had to be raised on direct appeal, thus, it cannot be raised now by this collateral proceeding.

### 13.  Counsel Failed to Submit Pro-Se Motions and Failed to Preserve Pro-Se Motions Filed

During the proceedings, Alicea-Torres allegedly filed, and attempted to file, pro-se motions complaining about the government's violations of criminal rules of procedure and his constitutional rights, and other motions seeking judicial relief and help identifying witnesses (Motion, at pp. 17-18).  Apparently, he claims that the trial court should have held hearings to resolve the motions and that counsel failed to submit the motions.  Again, no specific motions are referred to, and no arguments developed and, as such, this claim should be summarily rejected.  See, Zannino, 895 F.2d at 17; Martinez-Cintron, 2005 WL 1961642, *1; Lockhart, 2001 WL 34134341, *3.

14. <u>Failure to Properly Object, Handle, Argue and Preserve Matters Related to Removal of and Notes From, Members of the Jury</u>

Alicea-Torres asserts that certain members of the jury gave false information regarding their involvement with individuals associated with the case, and that he wanted those members removed but that counsel refused to submit motions requesting their removal.  In that regard, he claims that members of the jury sent notes to the court that were not revealed to the defense or not appropriately handled by defense counsel (Motion, at p. 15).  All of Alicea-Torres' claims regarding the jury are entirely conclusory, without any specific citation to the record regarding any jury notes, or any specific false information that was provided to the court that was not addressed by defense counsel.  Accordingly, this claim should be summarily rejected.  See, <u>Zannino</u>, 895 F.2d at 17; <u>Martinez-Cintron</u>, 2005 WL 1961642, *1; <u>Lockhart</u>, 2001 WL 34134341, *3.

15.  <u>Failure to Request Special Verdict Form</u>

Alicea-Torres claims that counsel was deficient in failing to request a special verdict requiring the jury to determine drug quantity, drug type and whether or not he was involved in any murders (Motion, at pp. 18-19).  In that regard, he asserts that counsel should have "gotten a head[s]-up on the <u>Apprendi</u>-type issue" based on earlier Supreme Court's decisions such as <u>Jones v. United States</u>, 526 U.S. 227 (1999).

On direct appeal, Alicea-Torres argued that the district court erred in failing to

submit a special verdict form and also that his sentence violated <u>Apprendi</u>.  The First Circuit properly combined those claims and held that although <u>Apprendi</u> error occurred, the error was harmless beyond a reasonable doubt.   See, <u>Soto-Beniquez</u>, 356 F.3d at 45-48.  According to the Court, the government produced overwhelming evidence that the conspiracy involved at least five kilograms of cocaine, which triggers a maximum sentence of life imprisonment for all co-conspirators under 21 U.S.C. §841(b)(1)(A) and §846, as well as evidence that the conspiracy distributed more than 50 grams of crack cocaine necessary to trigger a life sentence (<u>Id</u> at 46-47).  As such, there can be no claim of ineffective assistance of counsel.   Moreover, a §2255 petition cannot be used to address a claim already decided adversely to him on direct appeal.   See, <u>Rainier v. United States</u>, 188 F.Supp.2d 141, 144 (D. New Hampshire, 2002), citing <u>United States v. Butt</u>, 731 F.2d 75, 76, n. 1 (1st Cir. 1984); See also, <u>Singleton v. United States</u>, 26 F.3d 233, 240 (1st Cir.1994) ("issues disposed of in any prior appeal will not be reviewed again by way of a 28 U.S .C. § 2255 motion").

16.  <u>Failure to Request Certain Jury Instructions and Object to the Instructions Given by the Court</u>

Although he states he cannot articulate with specificity the court's instructions that warranted an objection until he receives the trial transcripts, Alicea-Torres claims that he is not aware of any proposed jury instructions submitted by defense counsel

and that he should have requested that the court instruct the jury on, among other things, (1) all the elements of the offense charged; (2) multiple conspiracy charge; (3) witness-credibility charge; and (4) defendant's right to testify (Motion, at pp. 19-20).

The court charged the jury regarding the elements of the offense, regarding the defendant's right not to testify, and a multiple conspiracy charge (Court's Instructions 4, 9, 9A, 11, 12, 13, 14, 26). Indeed, the district court instructed the jury that it must acquit "[even if the evidence in the case shows that defendants were a member of some conspiracy, and not the single conspiracy charged in the indictment." As such, there is no merit that counsel was ineffective in failing to request certain jury instructions.

17. Failure to Argue Rule 29 Motion or Preserve Sufficiency of the Evidence for Appellate Review

Alicea-Torres claims that it was not foreseeable to him that some of the co-defendants were involved in drug dealing activities that involved cocaine base and that counsel should have moved for a directed verdict related to the charge that he conspired to possess or distribute in excess of five (5) kilograms of cocaine base (Motion, at pp. 20-21).

Initially, it is noted that defense counsel did make a Rule 29 motion, adopting all the arguments made by sister counsel and raising other claims (TT 05/21/99, at p. 55). That motion was denied. With respect to whether or not it was foreseeable to

26

Alicea-Torres that some of his co-defendants were involved in dealing cocaine base, that was for a jury to decide, and the jury decided he was guilty.  Additionally, counsel specifically argued that the Indictment did not inform Alicea-Torres of the charges pending against him, as there was no reference a murder even though that was a substantial part of the government's case-in-chief (Id. at pp. 55-58).  On appeal, the First Circuit, as previously noted, concluded that the district court did not abuse its discretion in allowing into evidence testimony regarding the various murders.

Accordingly, because defense counsel did pursue a Rule 29 motion, this claim is meritless.

18.  Counsel's Concession of Alicea-Torres' Guilt

Relying on an allegation that during closing argument he heard counsel concede his guilt on the drug charges, Alicea-Torres claims he was denied his right to a fair trial because counsel took this action without his knowledge.  He claims that counsel conceded his guilt on the narcotics charges "to curry favor with the jury" in the face of evidence suggesting that he was involved in the murder of a PR police officer and a female informant (Motion, at p. 21).

Alicea-Torres' claim could be nothing farther from the truth.  Defense counsel started his closing argument by stating:

Now, Eggy or Eduardo Alicea is an innocent man.  Mr. Alicea is innocent.  He is.  Now, I would like to tell you why, and of course that's

27

my job (TT 06/22&23/99, at p. 88).

He then stated that Alicea-Torres was wrongly accused (<u>Id.</u> at 89). Although defense counsel referenced Cesario-Soto's testimony that he saw Alicea-Torres dealing dope in the street, counsel did not admit that the testimony was accurate or truthful. To the contrary, he then explained how Cesario-Soto's testimony was inconsistent and how he lied (<u>Id.</u> at pp. 93-94).

A review of defense counsel's closing argument establishes that at no point did defense counsel concede his guilt to the drug charges. As such, this claim is unsupported, and there is absolutely no merit to this claim that Alicea-Torres was denied his right to a fair trial.

19. <u>Failure to Raise Conflict of Interest or Preserve Trial Court's Failure to Address Conflict of Interest Between Alicea-Torres and Counsel</u>

According to Alicea-Torres, his relationship with his attorney progressively deteriorated over time and he allegedly "repeatedly attempted to make a record of counsel's failure to effectively represent movant's interest" and help co-defendants at his expense (including his previous claim that he wanted to plead guilty but counsel advised against it) (Motion, at p. 22). Alicea-Torres claims to have written letters to the court regarding the relationship to no avail (<u>Id.</u>).

The criminal docket from the district court provides no evidence that Alicea-Torres sent a letter to the court regarding his relationship with defense counsel.

28

Indeed, his claim regarding the alleged conflict, and counsel's interest in helping co-defendants is entirely conclusory and self-serving, without any specific factual support. According to defense counsel in the accompanying declaration, during trial proceedings, Alicea-Torres did not express that he believed counsel was representing co-defendants' interests over his interests. And, at no point during the trial proceedings did he request that defense counsel raise the issue regarding their professional relationship to the court or request that new counsel be appointed. The only request made by Alicea-Torres was during the appellate proceedings, when he filed a pro-se motion seeking to substitute counsel. That motion, however, was denied by the court.

Accordingly, because Alicea-Torres' claim regarding the conflict is a mere bald assertion, it should be rejected.

20. <u>Cumulative Effect of All Alleged Ineffective Assistance of Counsel Claims</u>

If this Court were to review simply the sentencing hearing transcripts in this case, it would reveal the effectiveness of Alicea-Torres' counsel and the vigor in which counsel defended his client. Indeed, although Alicea-Torres ultimately ended up with a life imprisonment sentence, based on the arguments raised by counsel at the first sentencing hearing, the district court vacated the judgment and held a new sentencing hearing. While the sentence imposed was ultimately the same, life

imprisonment, the transcripts nevertheless demonstrate that counsel attempted to raise all the arguments he believed were viable and would result in a lower sentence for Alicea-Torres.  Counsel vigorously argued that the sentence imposed by the court, including the application of the enhancements, was improper and in violation of Alicea-Torres' rights.

Furthermore, the trial transcript reveals that throughout the course of the proceedings, counsel conducted thorough cross-examinations of the prosecution witnesses, raised numerous objections (or joined in the objections) and gave a strong closing argument.    Counsel's actions as a whole showed competence and effectiveness in defending his client.

In assessing the adequacy of counsel's performance, the Court looks to "prevailing professional norms." A flawless performance is not required. All that is required is a level of performance that falls within generally accepted boundaries of competence and provides reasonable assistance under the circumstances.  See, Ramirez v. United States, 17 F.Supp.2d 63, 66 (D.R.I.1998), quoting, Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir.1994), and citing Strickland, 466 U.S. at 688.  It is submitted that none of the twenty allegations of ineffectiveness reveal any conduct that fell below an objective standard of reasonableness or outside the range of professionally competent assistance.  Furthermore, none of Alicea-Torres arguments

establish that if counsel had acted differently that he would not have been found guilty

be the jury, who incidentally found all the other co-conspirators guilty as well.

Accordingly, because Alicea-Torres cannot satisfy either part of the <u>Strickland</u>

test, his ineffective assistance of counsel claim must be rejected.  See, <u>United States</u>

<u>v. Victoria</u>, 876 F.2d 1009, 1013 (1st Cir. 1989); <u>United States v. Kimler</u>, 167 F.3d

889, 892 (5th Cir. 1999).

**B:     Ineffective Assistance of Appellate Counsel**

Aside from alleging that appellate counsel (who was the same as trial counsel)

waited six months until he informed him that the Supreme Court denied his petition

for writ of certiorari, and that counsel should have argued that the district court should

not have applied the sentencing enhancements, Alicea-Torres' claim regarding the

alleged ineffectiveness of appellate counsel is entirely perfunctory.   See, <u>Zannino</u>,

895 F.2d at 17;  <u>Martinez-Cintron</u>, 2005 WL 1961642, *1.  He merely claims that

appellate counsel "failed to take appellate strategy most favorable to movant's interest

by comporting arguments in accordance to co-appellant's interest" (Motion, at pp. 24-

25).  No argument is developed, and neither the United States, nor this Court, should

be required to form an educated guess as to the claims that Alicea-Torres believes his

appellate counsel should have raised on appeal.  Significantly, counsel raised

numerous arguments on appeal, which were addressed by the First Circuit in a quite

lengthy and thorough opinion.  Although some of the issues were similar to arguments raised by co-appellants, there were also issues that only related to Alicea-Torres.  As such, without any development of argument regarding how exactly counsel's representation fell outside the wide range of professionally competent assistance, appellate counsel is entitled to a presumption that he rendered adequate assistance.  See, <u>Nunez v. United States</u>, 2005 WL 1364678, *7 (D. Puerto Rico. 2005).

To the extent that Alicea-Torres claims, without any citation, that appellate counsel should have challenged the enhancements (apparently the firearm enhancement and the upward departure), this claim lacks merit.  Pursuant to U.S.S.G. §5K2.1, courts are encouraged to depart upward from the otherwise applicable guideline sentencing range if the relevant offense conduct results in multiple deaths. A departure sentence should be upheld unless the court has abused its discretion.[2] See, <u>United States v. Carrion-Cruz</u>, 92 F.3d 5, 7 (1st Cir. 1996); <u>United States v. Hernandez-Coplin</u>, 24 F.3d 312 (1st Cir. 1994) (The test is whether the departure is "reasonable" and under the case law the standard of review is quite deferential to the district judge).  As previously noted, there was more than sufficient evidence that various murders took place in furtherance of the conspiracy which Alcea-Torres

---

[2]His sentence would have been reviewed based on the law at the time, which was pre-<u>Booker</u>.

joined. "Failure to raise a meritless legal argument falls well within this wide range of reasonable assistance and thus does not constitute ineffective assistance of counsel." Soto-Lara, 367 F.Supp.2d at 192; Isabel v. United States, 980 F.2d 60, 65 (1st Cir. 1992) (No Sixth Amendment violation may be premised on the failure of defense counsel to undertake that futile effort).

## C:    Alleged Denial of Fifth Amendment Right and Sixth Amendment Right to a Trial by Jury

In sum, Alicea-Torres argues that in light of the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005), the jury should have decided, beyond a reasonable doubt, the issue of drug quantity, the firearm enhancement and whether the upward departure because death resulted during the criminal activity (U.S.S.G. §5K2.1) (Motion, at pp. 25-27, 29-30).

There is no dispute that §2255 Booker relief is not available to cases that have finished or forgone the direct appeals process. See, United States v. Fraser, 407 F.3d 9, 11 (1st Cir. 2005) ("This court has held that petitioners under 28 U.S.C. §2255 are unavailable to advance *Booker* claims in the absence of a Supreme Court decision rendering *Booker* retroactive."); Cirilo-Munoz v. United States, 404 F.3d 527, 533 (1st Cir. 2005) (*Booker* allegations are not retroactive to cases on collateral review).

Here, Alicea-Torres' appeal was decided on November 20, 2003, (and amended on denial of rehearing on January 22, 2004), prior to Booker, as well as Blakely v.

Washington, 124 S.Ct. 2531 (2004).  As such, when Alicea-Torres was sentenced, the court was required to follow the sentencing guidelines.  Therefore, he is not entitled to relief under the holding of either case.  See, Ramirez-Ferrer v. United States, WL 1153772 (D. Puerto Rico, 2005) (Denying §2255 motion that sought collateral relief under the holdings of Blakely and Booker).

**D:    Claim of Innocence**

Alicea-Torres asserts that he is innocent of the "enhanced portion of the sentence," and that portion that was beyond that authorized by law at the time of sentencing (Motion, at pp. 28-29).  Alicea-Torres' argument is not at all clear, but he appears to argue that any procedural bars should not be a bar to relief in light of his actual innocence and fundamental fairness.   Because this issue is not developed, it should be summarily rejected. See, Zannino,895 F.2d at 17.  Moreover, as addressed throughout this response, there was more than sufficient evidence offered at trial to find Alicea-Torres of the crimes charged, and more than sufficient evidence to support the application of the firearm enhancement and the upward departure.

**Conclusion**

This court may summarily dismiss a §2255 motion, without an evidentiary hearing, if its claims are inadequate on their face.  See, Barrett v. United States, 965 F.2d 1184, 1195 (1st Cir. 1992).  In light of the preceding, it is clear that petitioner's

assignment of errors fail to present a cognizable claim for relief.  As such, Alicea-Torres's petition should be summarily denied.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 9th day of September, 2005.

H.S. GARCIA
UNITED STATES ATTORNEY

S/Nelson Pérez-Sosa, USDC 202201
Assistant United States Attorney
Senior Appellate Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Street
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 12, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: Mr. Eduardo Alicea-Torres, Reg. No.: 15461-069, USP Atlanta, P.O. Box 150160, Atlanta, Georgia 30315.

In San Juan, Puerto Rico, this 9th day of September, 2005.

S/Nelson Pérez-Sosa
Assistant United States Attorney
Senior Appellate Attorney