IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDUARDO ALICEA-TORRES,     *
Petitioner,     *
     *
     *
     v.     *     Civil No. 05-1544 (DRD)
     *     Related to Crim. No. 97-076 (DRD)
     *
UNITED STATES OF AMERICA,     *
Respondent.     *
_____     *

## OPINION AND ORDER

Eduardo Alicea-Torres (hereinafter, "Petitioner"), proceeding *pro se*, has moved to vacate, set aside, or correct his sentence pursuant to section 2255 of Title 28 of the United States Code ("section 2255"). Following a jury trial, Petitioner Eduardo Alicea-Torres was convicted of conspiracy to distribute narcotics and possession with intent to distribute narcotics in violation of 21 U.S.C. § 841 and § 846. The Court of Appeals affirmed the conviction on all counts. In his present *pro se* motion to vacate under 28 U.S.C. § 2255, Petitioner alleges that he was denied effective assistance of counsel at his trial and on direct appeal. For the following reasons, the Court DENIES his motion.

## I. BACKGROUND

On April 10, 1997, a Federal Grand Jury returned a two count indictment against Alicea-Torres and twenty-one (21) other co-defendants (D.E. 1). On December 14, 1998, a superseding indictment was returned adding another defendant to the case - the Government alleged the same charges against the same defendants listed in the original indictment. (D.E. 397). Count Two charged that from or about January 1, 1990, until about March 7, 1994, all twenty-one defendants conspired to distribute more than five kilograms of heroin, more than five kilograms of cocaine, more than five kilograms of

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                                Page 2

cocaine base, and more than 100 kilograms of marijuana, as prohibited by 21 U.S.C. § 841 (a)(1) and

21 U.S.C. § 846.

From December 28, 1998 to June 25, 1999, eleven of the 22 defendants were tried before a jury.

On June 25, 1999, the jury convicted all eleven defendants, including Alicea-Torres, on all counts with

which they were charged. (D.E. 852).

On January 20, 2000, Petitioner Alicea-Torres was sentenced to life imprisonment. (D.E. 1126,

1134). At that sentencing hearing, the Court heard arguments in determining quantity of drugs involved

in resolving the base offense level for sentencing Petitioner. Defense counsel argued that Petitioner

Alicea-Torres could not have reasonably foreseen the full amount of cocaine (e.g. 150 kilograms of

cocaine) attributable to the conspiracy for which he was convicted. (Sent. Tr., 01-20-00, PP. 3-10). The

Government responded that the entire amount was foreseeable to Petitioner because he knew of the size

and breadth of the drug conspiracy. The Government presented several witnesses linking Petitioner

Alicea-Torres to the conspiracy. In essence, these witnesses testified in some detail as to the facts

surrounding the issue of the amount of cocaine attributed to the Petitioner. According to government

witness, Luis Torrens-Alicea, in 1993, Juan Antonio López, a/k/a El Bebo, stole a shipment of cocaine

in excess of 200 kilograms in the area of Fajardo and brought it to Bitumul. Petitioner's aiding and

abetting the distribution of drugs was supported by testimony with regard to his activities. Additionally,

Victor Negrón-Maldonado, a/k/a "Pitocito", testified that, frequently at Bitumul, he cooked kilograms

of cocaine base into crack cocaine. In fact, Petitioner Alicea-Torres was one of the individuals who

distributed the crack. (Sent. Tr., 01-20-00, PP. 9-10, 33-34). The Court then assessed Petitioner's base

offense level at thirty-eight (38).

According to the Court, Petitioner's sentencing in a drug conspiracy was guided by USSG §

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                              Page 3

2D1.1, which included a cross reference providing that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)." See USSG § 2D1.1(d)(1). USSG § 2A1.1, in turn, provided simply "Base Offense Level: 43." (Sent. Tr., 01-20-00, PP. 37-38; PSR, P. 6, ¶ 17 ). Thus, Petitioner's offense level of 43, in combination with his criminal history category of II, resulted in a sentence of life imprisonment. The Court consequently sentenced Petitioner to life imprisonment, and judgment was entered on February 1, 2000. (D.E. 1134).

Subsequently, the Court reassessed Petitioner's sentence and determined that the life imprisonment guideline penalty provided under U.S.S.G. § 2D1.1 (d)(1) should not have been applied to Petitioner. Thus, the Court set a date for a new sentencing hearing, at which the Court could vacate the original sentence and impose a new sentence.

The resentencing hearing took place on February 28, 2000. At that hearing, the Court advised that it might depart upward because the crimes of conviction involved violence. (Sent. Tr., 02-28-00, P. 2). While defense counsel argued that Petitioner should not be held accountable for all of the drugs (Sent. Tr., 02-28-00, P. 7-8), the Government argued that this same issue had already been settled in the prior sentencing hearing. (Sent. Tr., 02-28-00, P. 8). The Court then concluded that the amount of drugs called for an offense level of 38. (Sent. Tr., 02-28-00, P. 8).

Subsequently, defense counsel raised an objection to a two-point weapons enhancement. (Sent. Tr., 02-28-00, P. 9). The Government, however, argued that testimonial and scientific evidence showed that Petitioner Alicea-Torres personally possessed weapons in furtherance of the conspiracy. (Sent. Tr., 02-28-00, PP. 11-12). The Government made further reference to the testimonial evidence disclosing Petitioner's participation in a double murder where he killed an undercover police officer. (Sent. Tr.,

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                                      Page 4

02-28-00, P. 12). Thus, the Court properly enhanced Petitioner's sentence under § 2D1.1(b)(1). (Sent.

Tr., 02-28-00, P. 13).

The Government proposed an upward departure based on the use of violence in the crimes

committed. Counsel strongly objected to the Court's upward departure, and tried to convince the Court

that Petitioner had not been found guilty of any violent crime.  After hearing arguments on the

Government's request for an upward departure, this Court made abundantly clear its belief that the

appropriate sentencing outcome for Petitioner Alicea-Torres was life imprisonment.  After reviewing

the criminal history record, the Court concluded that the sentencing guidelines underrepresented

Petitioner's criminal history. The Court articulated this reason at sentencing.  (Sent. Tr., 02-28-00, P.

24).

On direct appeal, Petitioner raised the following claims: 1) a generalized attack on the

Government's dilatoriness in turning over discovery material; 2) an allegation that the Government

knowingly offered in evidence perjured testimony from witness Cesário-Soto; 3) an argument that there

were multiple Brady and Giglio violations; 4) a claim that the lower court erred in not providing the jury

with a special verdict form requiring it to determine the quantity and type of drugs as to each defendant;

5) an argument that his sentence violated the rule of Apprendi.  His conviction and sentence were

affirmed in their entirety on direct appeal by the First Circuit. See, United States v. Soto-Beniquez, 356

F.3d 1 (1st Cir. 2003).

Petitioner now moves this Court to vacate, set aside, or correct the sentence, pursuant to 28

U.S.C. § 2255, on the grounds that his attorney was ineffective because he failed to: 1) file certain

motions with the court, object to the admission of evidence or request jury instructions; 2) adequately

explain to him the Sentencing Guidelines or pursue plea negotiations; 3) exclude jurors, call witnesses

to testify or conduct an adequate investigation; 4) that pursuant to <u>United States v. Booker</u>, 125 S.Ct.

738 (2005), he claims to have been deprived of his Sixth Amendment right to a trial because the jury

did not make any specific finding as to the type or quantity of drugs or other enhancements, and that,

instead, this Court made evidentiary findings based on a preponderance of the evidence; 5) counsel

failed to raise on direct appeal the imposition of an upward departure based on murders not charged in

the Indictment, nor determined by the jury beyond a reasonable doubt.

In his section 2255 motion, Petitioner has presented an extended number of claims. The absence

of discussion of some of them is attributed to the insubstantiality of the claims and not to the Court's

failure to consider them.

### A. The Offense Conduct

This case is about one overarching conspiracy to distribute drugs at Bitumul (Israel Ward) in

Hato Rey, San Juan, Puerto Rico and to protect that distribution through multiple murders.  The

Government prosecuted a violent street gang dedicated to the distribution of narcotics at six different

drug points within the Bitumul Ward.  The Government case relied substantially on the testimony of

several cooperating co-conspirators, to wit, Ramón Cesário-Soto, Victor Negrón-Maldonado (a/k/a

Pitosito), and Luis Torrens-Alicea (a/k/a Pito Salsa).  From on or about January 1, 1990, until on or

about March 7, 1994, the defendants would purchase multi-kilogram quantities of heroin, cocaine and

marihuana at wholesale prices.  They would then cut, divide and package the narcotics in small vials

or plastic baggies for subsequent sale to customers at drug points.  Additionally, the defendants would

also cook some of the cocaine purchased and create cocaine base ("crack cocaine"), which would also

be packaged in vials for sale at drug points.  The defendants would use residences and other locations

to store narcotics, cook cocaine into crack cocaine, and package the heroin, cocaine, crack cocaine and

marihuana to be distributed at the drug points.  In order to protect the sale of narcotics at the different drug points, the defendants possessed, carried and used firearms.  These firearms were used to stand guard at the different drug points in order to protect the sales of narcotics, or to seek out and murder rival gang members who posed a threat to the drug distribution conspiracy.

The evidence at trial revealed the following facts regarding Petitioner's involvement in the conspiracy. Eduardo Alicea-Torres, a/k/a "Eggy," sold drugs at the Cuba Street and Callejón Dos drug points from 1990 until at least 1991.  These drug points were controlled by co-defendants Soto-Ramírez and Soto-Beníquez.  (Trial Tr., 1/19/99, P. 29; 1/21/99, P. 130).  Petitioner eventually established his own drug point. It also transpired that the government main witness, Victor Negrón-Maldonado, a/k/a "Pitosito", cooked crack for Petitioner Alicea-Torres.  (Trial Tr., 1/21/99, P. 62; 1/25/99, P. 43).

Furthermore, the  evidence demonstrated that Alicea-Torres participated in various murders to protect the drug distribution conspiracy.  On February 20, 1991, Soto-Ramírez, Alicea-Torres and others, killed police officer Efraín Hernández-De-León and government informant Ana Luz Dones Arroyo, a/k/a "La Gallega."  The murders occurred while La Gallega attempted to guide the agent to the storage location of firearms in Alley No. 2 of the Bitumul Ward, where Soto-Ramírez and others stored their weapons.  After Soto-Ramírez was alerted of their presence, he went after them with a .45 caliber weapon and stopped the car. Soto-Ramírez grabbed La Gallega by the hair and shot her in the head.  Other shots were fired by Soto-Ramírez, Alicea-Torres and others.  Alicea-Torres and another conspirator then dragged the police agent away and killed him as well.  He was taken to a levy by Bitumul, run over with a car twice and his body abandoned.  Subsequently, Soto-Ramírez sheltered the participants in a house in Puerto Nuevo, while Bitumul was "hot" following the killings.  (Trial Tr., 1/21/99, PP. 52-60; 3/10/99, P. 64).

## II. LEGAL FRAMEWORK

### A. Legal Standard under 28 U.S.C. § 2255 and Procedural Default

Under 28 U.S.C. §2255, a district court may grant relief to a prisoner in custody under a sentence imposed by a federal district court "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack..." See, 28 U.S.C. §2255.

A motion under §2255 is not a substitute for direct appeal and presents a higher standards that a petitioner must clear to bring a claim. United States v. Frady, 456 U.S. 152, 164, 102 S.Ct. 1584, 71 L.Ed2d 816 (1982); United States v. Addonizio, 442 U.S. 178, 184-85 (1979). Once a defendant's chance to appeal has been exhausted, there is a presumption that the conviction is fair and final. Id. As the Supreme Court has pellucidly  explained in United States v. Frady, "[o]nce the defendant's chance to appeal has been waived or exhausted... we are entitled to presume he stands fairly and finally convicted, especially when, as here, he had already has a fair opportunity to present his federal claims to a federal forum." Frady, 456 U.S. at 164.  Moreover, a §2255 motion may not be used to relitigate an issue that was raised and considered on direct appeal without some highly extraordinary circumstance, such as an intervening change in the law. Davis v. United States, 417 U.S. 333, 345, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'"  Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted);  Massaro v. United States, 538 U.S. 500, 504 (2003) ("Claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                         Page 8

prejudice.").

    The Supreme Court has made clear that "cause" is measured by a stringent standard of diligence.

See, e.g., Coleman v. Thompson, 501 U.S. 722, 753 (1991) ( "cause" is "something external to the

petitioner" that "cannot be fairly attributed to him"; "[a]ttorney ignorance or inadvertence is not

'cause'") (emphasis in original); Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed. 2d 397

(1986)("[C]ause for a procedural default on appeal ordinarily requires a showing of some external

impediment preventing counsel from constructing or raising the claim.").  In this respect, the existence

of cause to excuse a procedural default is dependent upon the petitioner's ability to show that some

objective factor external to the defense impeded compliance with the procedural rules.  Murray, 477

U.S. at 488.   A showing that the factual or legal basis for a claim was not reasonably available to

counsel or that interference by some officials made compliance with the procedural rules impracticable,

would constitute cause under this standard.  Strickler v. Greene, 527 U.S. 263, 283, 119 S.Ct. 1936, 144

L.Ed.2d 286 (1999).

    A showing of prejudice must be made along with the adequate showing of cause.  Reed v.

Farley, 512 U.S. 339, 358, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994).   In order to show prejudice, the

petitioner must show a reasonable probability that the result of the trial would have been different had

the claimed errors, which were procedurally defaulted, not occurred.  Strickler, 527 U.S. at 289-90.

Furthermore, "the resulting prejudice must create an actual and substantial disadvantage, infecting [the

petitioner's] entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170.  If a defendant

fails to establish "cause" and "prejudice" to excuse a procedural default, he can obtain collateral review

of his constitutional claim only by demonstrating that the constitutional error "has probably resulted in

the conviction of one who is actually innocent." Bousley, 523 U.S. at 623.   The Supreme Court has

emphasized that " 'actual innocence' means factual innocence, not mere legal insufficiency." Id. To

establish actual innocence, petitioner must demonstrate that, "in light of all the evidence, it is more

likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 327-

28 (1995) (quotations and citation omitted)).

### B. Ineffective Assistance of Counsel Standard

The U.S. Supreme Court has articulated a two-pronged test to evaluate claims of

ineffective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d

674 (1984). To prevail on a claim of ineffective assistance of counsel, the Petitioner must show (1)

"that counsel's representation fell below an objective standard of reasonableness... under prevailing

professional norms" and (2) that there is a reasonable probability that but for counsel's unprofessional

performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 687-88.

Under the  first prong of the Strickland test, Petitioner must show that "counsel made errors so serious

that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Strickland, 466

U.S. at 687.   This prong is not satisfied unless the Court is persuaded that an attorney's actions were

objectively unreasonable.  To evaluate counsel's effectiveness, "[t]he proper measure of attorney

performance remains simply reasonableness under prevailing norms." Strickland, 466 U.S. at 688.

The Court is bound to apply this standard "in light of all circumstances [in the case]." Id., at 690.

If Petitioners meets the first prong of the Strickland test, he then must establish "that the

deficient performance [of counsel] prejudiced the defense." Id.  The second prong of the Strickland

test demands that Petitioner affirmatively "show that there is a reasonable possibility that, but for

counsel's unprofessional errors, the results of the proceeding would have been different." Id. at 694.

In other words, where a Petitioner establishes counsel's incompetence, the Petitioner must still meet

the second prong of the test, <u>Strickland</u>, 466 U.S. at 687, and show that he was prejudiced by counsel's actions. <u>Id</u>. at 693-94. There must be a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694. To make this determination, the Court "must consider the totality of the evidence before the judge or jury." <u>Id.</u> at 695. It is not enough for the Petitioner to show that counsel's error had "some conceivable effect" on the outcome of the case; there must be a showing that the decision reached would reasonably likely have been different." <u>Id</u>. at 693, 696.

In analyzing a claim that counsel's performance fell short of constitutional standards, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument." Instead, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". <u>Id.</u>, at 689. As explained by the Supreme Court, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. <u>Id.</u>, at 690-91. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, ''viewed as of the time of counsel's conduct,'' and may not use hindsight to second-guess his strategy choices." <u>Id.</u>, at 690. Furthermore, the Supreme Court advises that in reviewing trial performance [i]t is all too tempting for a defendant to secondguess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties

inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance;  that is, the defendant must overcome the

presumption that, under the circumstances, the challenged action might be considered sound trial

strategy." Id., at 689 (internal quotations and citations omitted).  Thus, a Petitioner cannot prevail on

a claim of ineffective assistance merely because he disagrees with his counsel's strategy.  See, Jones v.

Barnes, 463 U.S. 745, 751-52 (1983) (explaining that an indigent appellant does not have a

constitutional right to compel appointed counsel to press every nonfrivolous point on appeal and

recognizing "the importance of having the appellate advocate examine the record with a view to

selecting the most promising issues for review");  Mayo v. Henderson, 13 F.3d 528, 533 (2nd Cir. 1994)

("[I]t is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous

argument, for counsel does not have a duty to advance every nonfrivolous argument that could be

made.").

### III. DISCUSSION

This Petition contains numerous procedurally barred claims which Petitioner inappropriately

collects under the rubric of "ineffective assistance of counsel."

In general, a failure to raise a particular issue on direct appeal bars a court from examining the

merits of that issue in a § 2255 petition unless the petitioner can establish either cause for failing to raise

the issue and prejudice resulting therefrom or show proof that he is actually innocent.  See, Bousley,

supra.  Thus, Petitioner must show both "cause excusing his procedural default and actual prejudice

from the unpreserved error in order to obtain collateral relief." Prou v. United States, 199 F.3d 37 (1st

Cir. 1999).  Moreover, such "cause under the cause and prejudice test must be something external to

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                                        Page 12

the petitioner," such as administrative interference. Coleman v. Thompson, 501 U.S. 722, 753 (1991).

In the alternative, Petitioner can establish his innocence only if he can "demonstrate that in light of all

the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley,

523 U.S. at 623.

        In the instant case, except for the claims noted in the Background section of this Opinion and

Order, which were fully litigated on direct appeal, and the ineffective assistance of counsel claims

(addressed below), Petitioner Alicea-Torres has procedurally defaulted on all of the claims raised

herein, including, for example, claims related to plea negotiations, preservation of alleged material

evidence favorable to him, prosecutorial misconduct, constructive amendment of indictment, and so

forth. Petitioner was represented by able counsel at trial, at sentencing and on appeal and has not shown

any "external" cause for his failure to raise any of these claims.

        Even if Petitioner Alicea-Torres could show cause for failing to raise these issues on appeal, he

has not shown prejudice resulting from the acts attributed to counsel.  For example, Petitioner fails to

show how any of the issues raised would have been decided in his favor or that the outcome of the trial

would have been different but for his counsel's failure to raise these issues.  Similarly, Petitioner fails

to show any prejudice resulting from the alleged unpreserved errors.  Petitioner has also failed to show

actual innocence in that he has not responded or rebutted adequately to the overwhelming evidence

offered against him at trial.

## A. INEFFECTIVE ASSISTANCE BY TRIAL COUNSEL

### 1. Counsel's Failure to Move for Severance.

        Petitioner Alicea-Torres initially contends that his attorney was ineffective when he failed to

move to sever his case from that of his co-defendants.  Petitioner states that his co-defendants were

involved in the drug conspiracy for a much longer time and much more extensively than he was, and

his defense was severely prejudiced by evidence of their activity.  He argues that his counsel's failure

to file a motion to sever was in error.  See, Petition, P. 6.

Federal Rule of Criminal Procedure 8 (a) allows joinder of multiple counts if they are "of the

same or similar character, or are based on the same act or transaction, or are connected with or

constitute parts of a common scheme or plan."  The presumption in favor of joint trials is especially

strong when the defendants are charged with conspiracy.  United States v. Vega-Molina, 407 F.3d 511,

532 (1st Cir. 2005).   However, Federal Rule of Criminal Procedure 14 provides that even properly

joined defendants may obtain a severance if it appears that a defendant is prejudiced by a joinder of

offenses or of defendants.  See, Fed. R. Crim. P. 14 .  In order to succeed with this claim, Petitioner

Alicea-Torres must show that the joinder created actual prejudice that deprived him of a fair trial.

United States v. Magana, 127 F.3d 1, 7 (1st Cir. 1997); United States v. Flores-Rivera, 56 F.3d 319, 325

(1st Cir. 1995).  A fair trial is one in which evidence subject to adversarial testing is presented to an

impartial tribunal for resolution of issues defined in advance of the proceeding.  Strickland, 466 U.S.

at 685.  Apart from vague and unsupported assertions, Petitioner Alicea-Torres presents nothing to

demonstrate that his counsel's failure to file a motion to sever was not outside "the wide range of

professionally competent assistance."  Strickland, 466 U.S. at 690.  He also fails to show that in any

way he was denied a fair trial by reason of the joinder of the charges against him with the trial of his

co-defendants.  He is therefore not entitled to relief based on this first specification of attorney

ineffectiveness.

Furthermore, as to other co-defendants, the Court of Appeals, considered and rejected this claim

determining that denial of motion for severance was not an abuse of discretion despite co-defendants'

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                        Page 14

unfounded assertion that evidence adduced against them was prejudicial.  United States v. Soto-Beníquez, 356 F.3d 1, 29-31.

**2. Counsel's Failure to Conduct Adequate Investigation.**

Petitioner Alicea-Torres contends that his lawyer failed to investigate the facts of the case and interview witnesses.  See, Petition, P. 7.

The initial problem with Petitioner's conclusory assertions that his trial counsel failed to adequately investigate the case and prepare for trial is that the Petitioner has identified no exculpatory evidence or additional defensive theories that would have been discovered or developed had his counsel investigated the case more thoroughly.  Nowhere in his original Petition does Petitioner Alicea-Torres identify any potential defense witnesses who could have testified at Petitioner's trial, explain what testimony any of those witnesses could have provided, or otherwise identify any exculpatory evidence then-available that could have been discovered or developed by a more thorough investigation by his trial counsel.  Thus, those assertions of ineffective assistance do not satisfy the prejudice prong of Strickland.

Since Petitioner fails to articulate what facts the additional investigation or interviews would have uncovered valuable evidence, he cannot claim that he was prejudiced from any alleged inaction by his attorney. United States v. Porter, 924 F.2d 395, 397 (1st Cir. 1991) (no "prejudice" absent showing that failure to investigate or interview witnesses deprived defendant of "viable defense").

**3. Counsel's Failure to Inform Petitioner of Sentence Exposure and to Pursue Plea Negotiations.**

Petitioner Alicea-Torres claims that his counsel failed to inform him about plea offers and negotiations and the sentencing exposure he faced at trial.  Specifically, Petitioner raised the following claims.  First,  according to Petitioner, counsel advised that he was facing, at most, 17-20 years of

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                              Page 15

imprisonment for the conspiracy drug charge;  Petitioner alleges that counsel failed to advise that he

could face a life sentence without parole based on evidence that he participated in the murder of a police

officer and a female government informant.  Second, Petitioner claims that counsel did not instruct him

that the Court could enhance his sentence based on a preponderance of the evidence standard related

to facts not charged in the indictment or determined by a jury.  Otherwise, Petitioner claims that he

would have considered pleading guilty under a negotiated deal to receive base offense level reduction

for acceptance of responsibility.  Third, Petitioner claims that he would have considered pleading guilty

but was unable to do so because his counsel did not pursue plea negotiations, nor convey any actual

proposed plea agreements.  See, Petition, PP. 7-10.

          An attorney's failure to insist that his client accept the Government's plea offer due to

overwhelming evidence of guilt does not constitute constitutionally ineffective assistance.  See, Smith

v. United States, 348 F.3d 545, 552 (6th Cir. 2003).  The decision to plead guilty, first, last, and always

rests with the defendant, not his lawyer.  Although the attorney may provide an opinion on the strength

of the Government's case, the likelihood of a successful defense, and the wisdom of a chosen course

of action, the ultimate decision of whether to go to trial must be made by the person who will bear the

ultimate consequence of conviction. Id.

          Even if Petitioner Alicea-Torres' claims were cognizable on habeas review, the evidence in the

record totally belies Petitioner's claim that he was not informed about plea negotiations and sentencing

exposure. First, the Government sent out letters to communicate plea offers to all defendants.  This offer

was extended to October 11, 1998.  In Petitioner's case, he was offered a base offense level of 38, a

three-point enhancement for use of firearms, and a three-point reduction in his base offense level for

 acceptance of responsibility for a total base offense level of 37 and an imprisonment range of 17 to 21

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                             Page 16

years, assuming a criminal history of I.  Actually, it turned out later that his criminal history category

was determined to be II.  However, the offer to Petitioner also warned him that if he proceeded to trial,

the Government would seek a two-level upward adjustment for his role as a supervisor, for a total base

offense level of  42, resulting in a guideline range of 30 years to life imprisonment.  Under the latter

course of action, the Government would seek a sentence of life imprisonment.

       Further, the plea offer was discussed in open court and defendant was granted until November

2, 1998, to accept the plea (D.E. 336), which he rejected.  Additionally, the Government offered a

package plea deal to all co-defendants which was discussed in open court and, again, rejected by the

Petitioner.  Next, Petitioner's counsel provided an affidavit in support of the Government's position

which states that the Petitioner Alicea-Torres was notified by counsel of the Government's plea offer

and that the offer was thoroughly discussed with Petitioner.  Yet Petitioner chose to reject the

Government's offer.  The evidence shows that it was Petitioner who refused to consider a plea and

insisted on going to trial.

       The fact that Petitioner Alicea-Torres may now regret his decision after the resulting in

conviction and sentence will not provide a basis for relief.  Petitioner's current dissatisfaction does not

constitute a valid basis on which to find that his counsel was ineffective.

**4. Failure to Object to Unduly Prejudicial Evidence or File a Motion Seeking Its Exclusion.**

       Petitioner Alicea-Torres claims that the Government was permitted to introduce highly

inflammatory and unduly prejudicial evidence.  See, Petition, P. 10.

       Without regard to the procedurally defaulted nature of this claim, Petitioner makes no showing,

nor does the record indicate where such alleged inflammatory and unduly prejudicial evidence lies.  No

theory of exclusion has been advanced herein.  Neither does Petitioner explain how the alleged

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                    Page 17

objections or the filing of such motion for exclusion might have had merit.  In the absence of any

showing by Petitioner that objections to Government's evidence or a motion for exclusion might have

had merit, Petitioner has failed to establish that he was prejudiced by defense counsel's alleged

ineffective assistance.

**5. Failure to Exclude Jurors for Cause or Use of Peremptory Challenges.**

Petitioner Alicea-Torres claims that he requested counsel to remove at least three jurors on

grounds of bias in favor of the Government.  See, Petition, P. 11.  These jurors are not identified.  In

essence, Petitioner contends that his trial counsel did not provide him with effective representation

because he did not pose questions to the venire which would reveal latent feelings of bias or prejudice

among the veniremembers.  Petitioner's argument is grounded not in fact, but rather in speculation that

further questioning of certain allegedly biased jurors would have revealed their inability to impartially

follow the law.  Petitioner's claim fail to specify the basis for this claim such as the names and

circumstances related to bias, and he has not shown any basis to find that trial counsel's decision failed

to meet an objective standard of reasonableness, or that the decision resulted in prejudice.

This Court's examination of the record found that counsel's voir dire of the jury adequately

explored these areas of bias and prejudice.  The Court will not second guess the length or detail of an

attorney's voir dire examination. Thus, in the absence of any showing of prejudice, the Court finds the

Petitioner's claim meritless.

**6. Failure to Properly Cross-Examine Witnesses**.

Petitioner Alicea-Torres claims that counsel failed to cross-examine many of the Government's

witnesses and completely waived cross-examination of others.  See, Petition, P.12.  Petitioner makes

particular reference to the testimony of Cesário-Soto in connection with his activity in known drug areas

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                                    Page 18

and asserts that if counsel had conducted proper cross-examination of Cesário-Soto there would have

been a reasonable probability that the jury would have concluded that testimony of Cesário-Soto and

government witness Torrens-Alicea was false.  Id.

Here, Petitioner reasserts an issue unsuccessfully raised on appeal, namely, that the Government

offered in evidence perjured testimony from Cesário-Soto, an argument rejected by the Court.  At trial

Cesário-Soto testified that he observed Petitioner Alicea-Torres sell drugs at two different drug points.

Petitioner claims that at an earlier interview with the Government prior to trial, Cesário-Soto stated that

Petitioner Alicea-Torres was not  in the area where drugs were sold.  This conflicting testimony serves

as Petitioner's basis for claiming that his counsel failed to conduct proper cross-examination that would

help the jury determine that Cesário-Soto's testimony deserved no credibility.  In finding no prejudice,

the First Circuit expressly stated that "[d]efense counsel cross-examined Cesário-Soto as to the

supposed conflict between his testimony and the statements he made during the interview.  Moreover,

Cesário-Soto was not the only witness to link [Petitioner] Alicea-Torres to two different drug points:

Negrón-Maldonado testified that Alicea-Torres sold drugs at Callejon (sic) Dos and Torrens-Alicea

testified that Alicea-Torres conducted drug transactions with Rodríguez-López and spent time at

Callejón Nueve.  There is no reasonable likelihood that any false testimony could have affected the

judgment of the jury."  See, Soto-Beniquez, 356 F.3d at 35.

The First Circuit rejected Petitioner's claim on the merits, and the ends of justice do not require

this Court to consider the matter anew.  Accordingly, this Court is precluded from entertaining

Petitioner's claim. Petitioner has raised anew in this 2255 Petition claims previously filed in direct

appeal. However, the law in this circuit is that issues raised on direct appeal, already resolved, even

though waived, are barred in past-conviction matters. United States v. Escobar de Jesús, 187 F.3d 148,

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                              Page 19

159-162 (1ˢᵗ Cir. 1999); Segui Rodríguez v. United States, 421 F. Supp. 2d. 436, 438 (DPR 2006). See

also Reed v. Farley, 512 U.S. at 358 (concurring Opinion Scalia J.).

**7. Failure to Object to Prejudicial Hearsay Testimony.**

        Petitioner Alicea-Torres claims that defense counsel allowed numerous witnesses to give

testimony based on hearsay, double hearsay, and triple hearsay without objecting or preserving any issue

for appellate review.  See, Petition, P. 13.

        First, by saying that defense counsel permitted the introduction of such hearsay statements,

Petitioner merely is advancing the same claims made by other co-defendants to the First Circuit.

Petitioner's argument is not only undeveloped, but fails to cite the alleged hearsay statements.

Petitioner has not even used new arguments to advance the same substantive claim.  Thus, his claim is

repetitive insofar as it refers to "other crimes not charged" or testimony not "necessarily related to the

drug conspiracy" in connection with the various murders.

        The First Circuit decided the issue on the merits and hence is barred from further raising the

issue at a 2255 Petition. United States v. Escobar de Jesús, Id.  Specifically, the First Circuit affirmed

this Court's admission regarding various murders because such murders were relevant to demonstrate

a motive for an overt act in furtherance of the conspiracy.  As relevant to Petitioner Alicea-Torres, the

First Circuit stated:

"It is also a reasonable inference that government informant Ana Luz Dones-Arroyo and undercover

police officer Efraín Hernández de León were killed in furtherance of the conspiracy - to prevent their

discovery of the group's weapons stash. The two were gunned down as Dones-Arroyo was leading the

officer to the location of the stash." Soto-Beníquez, 356 F.3d at 32.

        An attorney is not obliged to raise meritless claims and failure to do does not render his or her

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                      Page 20

legal assistance ineffective.  <u>See</u>, e.g., <u>Acha v. United States</u>, 910 F.2d 28 (1st Cir.1990);  <u>Brown v.</u>

<u>United States</u>, 42 F.Supp.2d. 122, 131 (D. Puerto Rico 1998).

## 8. Failure to Object to Prosecutorial Misconduct.

Petitioner Alicea-Torres contends that his attorney was ineffective in not objecting to the

prosecutor's mischaracterization of the evidence against him.  <u>See</u>, Petition, PP. 13-14.  The Court does

not find that there was such misconduct by the prosecutor, so this specification of attorney

ineffectiveness fails.  There is also no basis for any other contention of prosecutor misconduct.

Actually, although Petitioner claims that defense counsel did not argue prosecutorial

misconduct, defense counsel did raise that issue on appeal.  Counsel argued that the Government

committed multiple violations of <u>Brady/Giglio</u>. Specifically, counsel also contends that the government

has failed to turn over exculpatory evidence within the purview of <u>Brady v. Maryland</u>, 373 U.S. 83, 87,

83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963) (suppression of evidence favorable to accused violates due

process regardless of government's good faith).  Counsel also argued on behalf of Petitioner that the

Government had not turned over material relating to the credibility of significant government witnesses

as required by <u>Giglio v. United States</u>, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972)

(nondisclosure of evidence affecting credibility of government witness falls within <u>Brady</u> rule).  The

First Circuit specifically determined that the defendants were not prejudiced by the Government's delay

in revealing the information.  <u>Soto-Beníquez</u>, 356 F.3d at 40.  Counsel also accused the prosecutor of

misconduct by offering into evidence the perjured testimony of Cesário-Soto.  The First Circuit

addressed the issue and concluded that there is no reasonable likelihood that any false testimony could

have affected the judgment of the jury.  <u>Soto-Beníquez</u>, 356 F.3d at 34.

A habeas court will not usually readjudicate claims previously raised and rejected on direct

appeal. <u>Reed v. Farley</u>, 512 U.S. at 358 (Scalia, J., concurring in part and concurring in the judgment) ( "[C]laims will ordinarily not be entertained under § 2255 that have already been rejected on direct review." )

**9. Denial of Right to Testify at Trial.**

In his § 2255 motion, Petitioner Alicea-Torres alleged that he was denied effective counsel, when counsel failed to call him to testify at trial. Petitioner went on to claim that other co-defendants' counsel asked him to abstain from testifying for the benefit of other co-defendants. As such, Petitioner claims that his best interests were sacrificed for the benefit of those around him who convinced him to forgo his constitutional right to testify. <u>See</u>, Petition, PP. 14-15.

A defendant certainly has a constitutional right "to take the witness stand and to testify in his or her own defense." <u>Rock v. Arkansas</u>, 483 U.S. 44, 49 (1987). This right is one which only the defendant can choose to waive. <u>See</u>, e.g., <u>Passos-Paternina v. United States</u>, 12 F. Supp.2d 231 (D. Puerto Rico 1998); <u>Brown v. Artuz</u>, 124 F.3d 73, 77-78 (2d Cir.1997); <u>see also</u>, <u>United States v. Janoe</u>, 720 F.2d 1156, 1161 & n. 10 (10th Cir.1983). While the due process clause of the Fifth Amendment may be understood to grant the accused the right to testify, whether he accused will testify is primarily a matter of trial strategy to be decided between the defendant and his attorney. <u>Brooks v. Tennessee</u>, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972); <u>see also</u>, <u>United States v. Systems Architects, Inc.</u>, 757 F.2d 373, 375 (1st Cir. 1985).

In <u>Siciliano v. Vose</u>, 834 F.2d 29, 30-31 (1st Cir.1987), the Court rejected a similar argument as Petitioner is now raising. The <u>Siciliano</u> court upheld the district court's summary dismissal of Siciliano's claim placed that his attorney, by preventing him from testifying, rendered his trial unlawful. In denying his claim, the <u>Siciliano</u> court put the burden squarely on the Habeas Petitioner's shoulders,

first, to make specific allegations that his attorney "told [him] that he was legally forbidden to testify

or in some similar way compelled him to remain silent" and, second, to find support in the record for

the conclusion that "such specific factual allegations would be credible." Siciliano, 834 F.2d at 30-31;

see also, United States v. Edwards, 897 F.2d 445, 446-47 (9th Cir. 1990) (even where defendant claims

he was unaware of his right to testify and his attorney refused to call him to testify, his silence waives

the right).

     Pursuant to Siciliano, the Court will presume that a criminal defendant who fails to claim his

right to testify at trial waives that right. See, Siciliano, 834 F.2d at 30; Edwards, 897 F.2d at 446-47.

A Habeas Petitioner may rebut that presumption, however, by showing that his attorney caused him to

forego his right to testify. But mere conclusory allegations are insufficient. To rebut the presumption

that his silence waived his right to testify, a Petitioner must first allege specific facts from which a court

could reasonably find that trial counsel "told [the petitioner] that he was legally forbidden to testify or

in some similar way compelled him to remain silent." He must also demonstrate, from the record, that

those "specific factual allegations would be credible." Siciliano, 834 F.2d at 31; Zannino v. United

States, 871 F.Supp. 79, 83-85 (D.Mass.1994).

     In Passos-Paternina, the Court reached the following conclusion:

"It is extremely common for criminal defendants not to testify, and there are good reasons for this, as

we have seen. Yet it is simple not enough after being convicted for the defendant to say, "My lawyer

wouldn't let me testify. Therefore I'm entitled to a new trial". We agree with the First Circuit's ruling

in Siciliano v. Vose, 834 F.2d 29, 31 (1st Cir.1987), that this barebones assertion by a defendant, albeit

made under oath, is insufficient to require a hearing or other action on his claim that his right to testify

in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater

particularity is necessary-and also the court opines think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify-to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim. Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir.1991)." See, Passos-Paternina, 12 F.Supp.2d at 239.

The instant case is not a situation where the Petitioner Alicea-Torres wanted to testify and was prevented from doing so by the Court or counsel. Nor does the record contain anything which would alert the Court to a disagreement between the defense counsel and the client regarding whether he should take the stand. Furthermore, Petitioner's ineffective-assistance claim does not specify the grounds for his allegation other than to say that defense counsel's failure to call him to testify implicates his right to testify and that other co-defendants individually and through their lawyers "persuaded him" not to testify. This loose assertion fails to provide the Court sufficient facts of counsel's ineffectiveness. Contrary to Petitioner Alicea-Torres' undeveloped allegations, counsel attested in a sworn statement that he did not recall the Petitioner ever requesting to take the stand at his trial. Further, counsel declared that he did not instruct the Petitioner to not testify because it was not in the best interests of his co-defendants.

Petitioner's allegation of his lawyer's ineffectiveness in not calling him to the stand fails to reach the adequate threshold as to how counsel was ineffective or the circumstances surrounding Petitioner's failure to take the stand at his trial.

**10. Failure to Present Witnesses and Present Favorable Evidence.**

Petitioner argues that various witnesses were available to testify in his defense, and that his counsel failed to locate and interview them. Petitioner, however, fails to identify which witnesses were

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                          Page 24

available to testify. <u>See</u>, Petition, P.15.

Counsel's decisions regarding the calling of witnesses and the extent to which witnesses are to be cross-examined should not be second-guessed and do not, as a general rule, provide a basis for an ineffective assistance claim. <u>See</u>, <u>Barrett v. United States</u>, 965 F.2d 1184, 1194, n. 19 (1st Cir. 1992). The First Circuit has held that the decision not to call a particular witness is typically a question of trial strategy. <u>Lema v. United States</u>, 987 F.2d at 54. In addition, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." <u>Strickland</u>, 466 U.S. at 695-96. That general rule is clearly applicable here given Petitioner's failure to claim that defense counsel was advised of any specific witness he believed should have been called and his failure to explain how the absence of any witness had any bearing on the outcome of his trial.

Here, the Petitioner floundered in presenting a scintilla of evidence of testimonies or affidavits he maintains exist. <u>Id</u>. This lack of proof undermines the validity of Petitioner's allegations of his counsel's errors. <u>See</u>, <u>Buitrago v. Scullyi</u>, 705 F.Supp. 952, 954 (S.D.N.Y.1989) (counsel not ineffective for failing to present alibi witness where petitioner fails to show witness would provide alibi). In addition, overwhelming evidence against Petitioner Alicea-Torres existed and, thus, any potential errors have a diminished impact. The Government presented a persuasive case with substantial evidence against Petitioner at trial, including, but not limited to: (1) testimony showing that Petitioner Alicea-Torres began his participation in the Bitumul drug trafficking organization in 1990 by selling narcotics at the drug points located in Cuba Street (Trial Tr., 01/19/99, P. 29; 01/29/99, P. 130), which were controlled by co-defendants Soto-Ramírez and Soto-Beníquez. Petitioner Alicea-Torres continued selling narcotics at the Cuba Street drug points until at least 1991. Eventually,

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                        Page 25

Petitioner Alicea-Torres established his own drug point. Government witness Victor Negrón-Maldonado, a/k/a/ "Pitosito", cooked crack for Petitioner Alicea-Torres. (Trial Tr., 01/21/99, P. 62; 01/25/99). Cooperating witness Luis Torrens-Alicea also testified that in 1993, Juan Antonio López, also known as "El Bebo", stole a shipment of cocaine in excess of 200 kilograms in the area of Fajardo and brought it to Bitumul.   The substantial evidence presented by the Government indicate that the verdict at trial would not have been different had counsel investigated and used the witnesses. Therefore, in light of the extremely strong evidence against Petitioner Alicea-Torres, including testimony of his former accomplices, any deficiency by counsel still would not satisfy the second Strickland prong, of showing that Petitioner was prejudiced.

Accordingly, Petitioner has not proved that  his trial counsel was ineffective for failure to present certain witnesses .

## 11. Counsel's Failure to Object to Court's Constructive Amendment of Indictment.

Petitioner argues that this Court should not have instructed the jury that Petitioner Alicea-Torres could be found guilty of conspiracy if he conspired with any individuals, but should have required the jury to determine that his co-conspirators were those specifically named along with him in the Indictment. See, Petition, PP. 16-17.

A constructive amendment "occurs when the charging terms of the indictment are altered, ... in effect, by prosecution or court after the grand jury has last passed upon them." U.S. v. Paredes-Rodríguez, 160 F.3d 49 (1st Cir. 1998).   The basis asserted by Petitioner for this ineffective assistance of counsel claim merit little discussion.  To begin, Petitioner has not demonstrated cause for the default and prejudice or actual innocence.  His claim is procedurally defaulted for failure to raise it on a direct appeal.

In reality, the Court did not constructively amend the indictment at Petitioner's trial. To the contrary, the Court charged the jury regarding the elements of the conspiracy offense. The jury was instructed that in order to find the defendants guilty, the Government had to prove, beyond a reasonable doubt, "that between on or about January 1, 1990, and on or about March 7, 1994, the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people charged or named in the indictment to distribute controlled substances." See, Court's Instruction No. 14. Therefore, the Court's instructions did not authorize conviction of an offense not alleged in the indictment, and there was no constructive amendment.

**12. Counsel Failed to Submit Pro Se Motions.**

Petitioner Alicea-Torres claims that the Court should have held hearing on his *pro se* motions and that counsel failed to submit such motions. See, Petition, PP. 17-18.

The Strickland standard is a difficult hurdle to overcome, as courts "indulge a strong presumption that counsel's conduct falls within [a] wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Failure to raise a meritless legal argument falls well within this wide range of reasonable assistance and thus does not constitute ineffective assistance of counsel. Acha v. United States, 910 F.2d 28, 32 (1st Cir.1990) (noting that counsel was under "no obligation" to raise meritless claims); United States v. Victoria, 876 F.2d 1009, 1012-13 (1st Cir.1989) (explaining that failure to raise meritless claims does not indicate ineffective assistance of counsel as such claims have no effect on the result of a trial).

Petitioner fails to demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Petitioner's one line statement on pages 17-18 of his original petition that he wanted his *pro se*

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                        Page 27

motions filed are inadequate to establish cause or prejudice and is far too undeveloped an "argument"

to warrant analysis by the Court.   See, United States v. Martinez, 169 F.3d 1049, 1053 (7th

Cir.1999)(the Court need not address arguments that are undeveloped).  In any event, this argument was

entirely not raised on appeal.  This constitutes an independent ground for rejecting them.  See, e.g.,

United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir.1997) ("We have steadfastly deemed waived

issues raised on appeal in a perfunctory manner, not accompanied by developed argumentation.").

        Petitioner's underlying allegations of trial counsel ineffectiveness are without merit.

**13. Failure to Properly Object, Handle, Argue and Preserve Matters Related to Removal of and Notes From Members of the Jury**.


        Petitioner Alicea-Torres claims that certain members of the jury gave false information

regarding their involvement with individuals associated with the case, and that he wanted those

members removed but that counsel refused to submit motions requesting their removal.  He, thus,

claims that members of the jury sent notes to the Court that were not revealed to the defense or not

appropriately handled by defense counsel.  See, Petition, P. 15.

        This claim, like most other claims presented in this Petition, was not previously raised on

appeal.  When a habeas petitioner fails to present his claims at sentencing or on direct appeal, such

claims are procedurally barred from collateral review under § 2255 unless petitioner can demonstrate

"cause" excusing the procedural default and "actual prejudice" resulting from the errors of which he

complains.  See, Frady, 456 U.S. at 167-68; See also United States v. Escobar de Jesús, 187 F.3d 159-

162.

        Petitioner provides no citation to the record to support this assertion.  Further, he provides no

citation to authority for and no explication of this conclusory statement.   The record clearly does not

support these allegations.  The Court finds that Petitioner has failed to support his claim with anything beyond his own bare, conclusory allegations, which are insufficient to meet the required <u>Strickland</u>'s threshold.  Petitioner's conclusory allegation in this regard is insufficient to establish ineffective assistance of counsel.  Hence, he has failed to set forth cause or prejudice, either through argument or through evidence, sufficient to allow this Court to consider the claim on its merits.  Having failed to establish cause and prejudice,  this ground is considered waived for purposes of habeas review.

**14. Failure to Request Special Verdict Form.**

On appeal, Petitioner Alicea-Torres argued that this Court erred in failing to submit a special verdict form  and that his sentence violated the rule of <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  <u>See</u>, <u>Soto-Beníquez</u>, 356 F.3d at 45.  Again, Petitioner reargues the same <u>Apprendi</u> claim on habeas by contending that counsel did not request a special verdict requiring the jury to determine drug quantity, drug type and whether or not he was involved in any murders.  <u>See</u>, Petition, PP. 18-19.

Petitioner's first ineffective assistance of counsel claim can be disregarded because its substance was previously litigated on the merits on direct appeal.  Plaintiff alleges no new error.  He merely cloaks it under a different rubric.

Here, the jury instructions did not make reference to drug amount or quantity.  Notwithstanding, the jury was instructed that, to find the defendants guilty of the conspiracy count, it had to find that the Government proved the conspiracy charged in the indictment beyond a reasonable doubt.  The Court provided the jury a copy of the indictment.  The indictment charged the defendants with knowingly and intentionally distributing more than five kilograms of heroin, more than five kilograms of cocaine, more than five kilograms of crack cocaine, and more than one hundred kilograms of marijuana.  The jury was

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                              Page 29

also instructed that the actual amount of drugs need not be proven, and that the Government need only

prove that defendants distributed or possessed with intent to distribute a "measurable amount" of drugs.

The First Circuit found that the latter part of this instruction was a harmless <u>Apprendi</u> error.

Notwithstanding, the First Circuit determined that although an <u>Apprendi</u> error did occur, the

error was harmless beyond a reasonable doubt.  The Court of Appeals went on to say that the

Government produced overwhelming evidence that the conspiracy involved at least five kilograms of

cocaine, which triggers a maximum sentence of life imprisonment for all co-conspirators under 21

U.S.C. § 841 (b)(1)(A) and § 846.

Petitioner has cast this argument under the rubric of ineffective assistance of counsel, but the

Court of Appeals addressed and rejected this claim.  It is well settled in this Circuit that a prisoner may

not use a Section 2255 Petition to relitigate questions that were raised and considered on direct appeal.

<u>Singleton v. United States</u>, 26 F.3d 233 (1st Cir. 1994); <u>United States v. Escobar de Jesús</u>, 18 F.3d 159-

162.

**15. Failure to Request Certain Jury Instructions and Object to the Instructions Given by the Court.**

Petitioner Alicea-Torres claims trial counsel was ineffective for failing to request certain jury

instructions, *inter alia*, (1) all of the elements of the offense charged; (2) multiple conspiracy charge;

(3)witness-credibility charge; and (4) defendant's right to testify.  <u>See</u>, Petition, PP. 20-21.

Jury instructions are governed by Federal Rule of Criminal Procedure 30, which allows the

parties to request specific jury instructions in writing.  <u>See</u>, Fed. R. Crim. P. 30(a).  The Rule requires

the court to "inform the parties before closing arguments how it intends to rule on the requested

instructions." <u>See</u>, Fed. R. Crim. P. 30(b).  In order to preserve an objection for appellate review, a

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                          Page 30

party "must inform the court of the specific objection and the grounds for the objection before the jury

retires to deliberate." See, Fed. R. Crim. P. 30(d).

As the Government correctly points out, the problem with Petitioner Alicea-Torres' complaint

regarding the alleged lack of instructions is that, at the close of evidence, the jury was properly

instructed with the elements of the offense, the defendant's right not to testify, and a multiple conspiracy

charge. See, Court's Instructions 4, 9, 9A, 11, 12, 13, 14, 26).

Petitioner has failed to demonstrate that trial counsel was ineffective for failing to object to the

instructions.

**16. Failure to Argue Rule 29 Motion or Preserve Sufficiency of the Evidence for Appellate Review.**

Petitioner Alicea-Torres argues that his trial counsel rendered ineffective assistance because he

did not properly argue the grounds in support of his motion for a judgment of acquittal related to the

charge that he conspired to possess or distribute in excess of five (5) kilograms of cocaine base. See,

Petition, PP. 20-21.

The evidence produced by the Government was sufficient to permit the jury to find the Petitioner

guilty of the charge that he conspired to possess or distribute in excess of five (kilograms) of cocaine

base beyond a reasonable doubt, and that it was foreseeable to Petitioner that some of his co-defendants

were involved in dealing cocaine base.

Furthermore, defense counsel did file a motion for judgment of acquittal under Rule 29 of the

Federal Rules of Criminal Procedure, and the motion adequately presented the question of the

sufficiency of the evidence to the trial court.  Therefore, trial counsel did not render ineffective

assistance in this regard.

**17. Counsel's Alleged Concession of Alicea-Torres' Guilt.**

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                          Page 31

Petitioner Alicea-Torres claims ineffective assistance of trial counsel because counsel "conceded" his guilt.  See, Petition, P. 21.  The Court finds petitioner's assertion that his attorney conceded his guilt, to be unworthy of credence.  The Petitioner's claim is conclusively belied by the record as a whole and the factual premise of this claim is undermined by the transcript of the closing argument.  (Trial Tr. 06/22-23/99, P. 88).  Our review of defense counsel's closing argument reveals no concession of guilt, and nothing to support Petitioner's contention that his lawyer had abandoned him.  Indeed, counsel argued vehemently about the alleged innocence of the Petitioner and used his best efforts to do everything within reason and ethics to secure an acquittal for his client.  Petitioner's claim that his attorney conceded his guilt is simply preposterous and completely devoid of any merit.

**18. Failure to Raise Conflict of Interest or Preserve Trial Court's Failure to Address Conflict of Interest Between Petitioner and Counsel.**

Petitioner Alicea-Torres alleged that his professional relation with his attorney progressively deteriorated over time and he allegedly "repeatedly attempted to make a record of counsel's failure to effectively represent movant's interest" and help co-defendants at his expense.  See, Petition, P.22.

A defendant who raises no objection at trial must demonstrate in his § 2255 petition that an actual conflict of interest adversely affected the adequacy of his representation.  Cuyler v. Sullivan, 446 U.S. 335, 348-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980);  Familia-Consoro v. United States, 160 F.3d 761, 764 (1st Cir. 1998).  That proof of actual conflict (at least in situations where it is not obvious) has two components, each of which the defendant must show: "(1) the attorney could have pursued a plausible alternative defense strategy and (2) the alternative trial tactic was inherently in conflict with or not pursued due to the attorney's other loyalties or interests."  Familia-Consoro, 160 F.3d at 764;  see also, Brien v. United States, 695 F.2d 10, 15 (1st Cir.1982) (adopting this test).  Petitioner Alicea-Torres

satisfied no part of this test.

Petitioner appears to argue that his interests and counsel's interests diverged with respect to a particular course of action, specifically with respect to counsel's examination of various witnesses. Petitioner appears to point to the same previously raised conclusory factors in support of his argument that an actual conflict of interest adversely affected counsel's performance.  For instance, he claims that counsel represented the interests of other co-defendant's at Petitioner's expense.  Again, Petitioner does not, in support of this Petition, offer any information as to what the substance of the testimony of these alleged witnesses would have been.  There is no basis anywhere in the record for concluding that Petitioner's and counsel's interests were divergent on the issue of whether a particular witness should have been called; nor is there any basis anywhere in the record for concluding that  a particular witness would have been a plausible defense strategy or tactic.

Therefore, the Court finds Petitioner's contentions with respect to an actual conflict of interest lacks support and is totally unpersuasive.

**19. Counsel's Alleged Accumulated Errors.**

Petitioner Alicea-Torres finally contends at page 23 of his Petition that, even if the errors of his counsel did not individually work to prejudice his cause, when considered as a whole and in the context of the entire trial, the cumulative effect of these errors was to undermine confidence in the outcome of the trial.  He basically argues that counsel's egregious mistakes should be rectified.  The Court cannot agree.

The Petitioner seemingly would apply a volume theory, joining all of trial counsel's perceived errors, minimal or minor, into one huge mass with a Sixth Amendment denial of counsel label. However, this approach is not sanctioned by Strickland.  Strickland's rule is not adaptable to the

generalized allegations leveled by Petitioner.   By its very nature, the Strickland analysis focuses on particular errors and the harm which flows from them.   Strickland makes it clear that, to prove a claim of ineffective assistance of counsel, a habeas petitioner must identify a specific error and show prejudice flowing from that error.   Nothing in Strickland suggests that a combination of several errors can be prejudicial when none, standing alone, would be sufficient to authorize relief.

Finally, this cumulative effect allegation carries no more weight with the Court than if Petitioner had simply asserted that counsel must have been ineffective because the jury found him guilty.   Such a general complaint is not sufficient to support Petitioner's challenge to his sentence and will be dismissed without further discussion.

## B. INEFFECTIVE ASSISTANCE BY APPELLATE COUNSEL.

In his second ground for federal habeas corpus relief, Petitioner Alicea-Torres argues that his appellate counsel, who happened to be the same trial counsel, rendered ineffective assistance by failing "to take appellate strategy most favorable to movant's interest by comporting arguments in accordance to co-appellant's interest". See, Petition, P.P. 24-25.

Petitioner has the same constitutional right to effective assistance of counsel at the appellate level as he is entitled to at trial. Evitts v. Lucey, 469 U.S. 387, 399 (1985). "Appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000) (citing Jones v. Barnes, 463 U.S. 745 (1983)). It is, however, possible to lodge a Strickland claim based on counsel's failure to raise a particular claim, the Supreme Court has indicated that satisfying the first part of the Strickland test requires a showing that the ignored issues were "clearly stronger than issues that counsel did present." Campbell v. United States, 108 Fed. Appx. 1, 3 (1st

Civil 05-1544 (DRD)
Criminal No. 97-076 (DRD)                                               Page 34

Cir.2004) (citing Robbins, 528 U.S. at 288).  Even if we were to assume *arguendo* that Petitioner's

claim did satisfy the first prong of the Strickland test, that counsel's performance fell below an objective

standard of reasonableness, we cannot see how Petitioner could satisfy the second prong of Strickland,

which requires Petitioner to show that he was prejudiced by counsel's alleged errors.

Where a defendant's appellate counsel presented, briefed, and argued, albeit unsuccessfully, one

or more nonfrivolous grounds for relief on appeal, the defendant was neither actually nor constructively

denied assistance of counsel on direct appeal.  See, Moss v. Collins, 963 F.2d 44, 48 (5th Cir. 1992).

For that reason, where a defendant's appellate counsel presented nonfrivolous points of error on appeal

or did not seek to withdraw from representation without filing an adequate brief pursuant to Anders v.

California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), a defendant must satisfy both prongs

of the Strickland test in connection with his claims of ineffective assistance by his appellate counsel.

Id.  Therefore, because Petitioner's appellate counsel filed and briefed more than one non-frivolous

point of error in Petitioner's direct appeal, Petitioner must satisfy both prongs of Strickland to prevail

on his assertions of ineffective assistance by his appellate counsel.

Furthermore, satisfying the prejudice prong of Strickland in connection with a claim of

ineffective assistance by appellate counsel requires more than a mere complaint about deficiencies in

an appellate brief. Effective assistance of appellate counsel does not mean that counsel will raise every

available nonfrivolous ground for appeal.  Evitts v. Lucey, 469 U.S.at 394.  Nor will counsel be

deficient for failing to press a frivolous point.  Rather, it means, as it does at trial, that counsel performs

in a reasonably effective manner.  Id.  To prevail on a claim of ineffective assistance by appellate

counsel, a petitioner must identify with specificity all grounds for relief that he claims should have been

included in his appellate brief.  See, Russell v. Lynaugh, 892 F.2d 1205, 1213 (5th Cir.1989), cert.

denied, 501 U.S. 1259, 111 S.Ct. 2909, 115 L.Ed.2d 1073 (1991) (holding that generalized complaints about the quality of an appellate brief do not satisfy the prejudice prong of the Strickland test).

Appellate counsel did present more than one non-frivolous argument on appeal. On Petitioner's behalf, counsel argued the following claims: 1) a generalized attack on the Government's dilatoriness in turning over discovery material; 2) an allegation that the Government knowingly offered in evidence perjured testimony from witness Cesário-Soto; 3) an argument that there were multiple Brady and Giglio violations; 4) a claim that the lower court erred in not providing the jury with a special verdict form requiring it to determine the quantity and type of drugs as to each defendant; 5) an argument that his sentence violated the rule of Apprendi. These claims, although well-argued, were rejected on appeal. See, United States v. Soto-Beniquez, 356 F.3d 1.

Petitioner's first assertion of ineffective assistance by his appellate counsel consists of a conclusory assertion that his appellate counsel failed to argue "the district court's enhancements under the USSG or upward departure for a murder not alleged, charged or determined by the jury." See, Petition, PP.24-25. However the instant case involves a narcotics felony charge with a potential life imprisonment as a sentence together with a statutory cross reference under 18 U.S. 1111 involving a murder committed as part of a felony further authorized under the guidelines. USSG § 2D 1.1 and §2A 1.1. Moreover, Petitioner has not identified any authorities or theories which his appellate counsel could have cited or argued in support of Petitioner's claimed grounds of error on direct appeal and which would have provided the appellate court with a legal or factual basis for reversing Petitioner's conviction. As explained above, to prevail on a claim of ineffective assistance by appellate counsel, a Petitioner must identify with specificity all grounds for relief that he claims should have been included in his appellate brief. He failed to do so. Thus, Petitioner's generic complaints about the quality of his

appellant's brief do not satisfy the prejudice prong of <u>Strickland</u>.  <u>See</u>, <u>Russell v. Lynaugh</u>, 892 F.2d at

1213.  Petitioner has presented this Court with no compelling arguments in support of this aspect of his

ineffective assistance claim.

Petitioner's second ground of ineffective assistance by his appellate counsel does not warrant

federal habeas corpus relief.

## C. BOOKER ARGUMENT

Petitioner Alicea-Torres contends that in light of the <u>Booker</u> decision, <u>infra</u>, the jury should have

decided, beyond a reasonable doubt, the issue of drug quantity, the firearm enhancement and the upward

departure for conduct resulting in deaths.  Thus, he claims that because these issues were found by the

Court on a preponderance of the evidence standard and not by a jury beyond a reasonable doubt, he was

deprived of her Sixth Amendment right to a trial by jury.  <u>See</u>, Petition, PP. 25-27; 29-30.

In <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) and <u>United

States v. Fanfan</u>, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court addressed

the constitutionality of the Federal Sentencing Guidelines.  The Court failed to eliminate the Guidelines

as unconstitutional, thus, preserving their existence by making them advisory rather than mandatory.

<u>Borrero-Arroyo v. United States</u>, 379 F.Supp.2d 232 (D.Puerto Rico 2005).  Consequently, federal

courts are still to take into consideration the Federal Sentencing Guidelines when imposing a sentence.

<u>Id</u>. Hence, the Supreme Court held unconstitutional solely the mandatory application of the Federal

Sentencing Guidelines and not the Guidelines themselves.  <u>Id</u>.  Recently the First Circuit Court in

<u>United States v. Jiménez Beltri</u>, 440 F.3d 514 (1st Cir 2006) determined in an en banc decision that the

guidelines were an adequate starting point for district judges to begin an analysis of the sentence

pursuant to 18 U.S.C. 3553(a). The guidelines are to be addressed "in first instance . . ." are not "just

another factor . . ." because they are "the only integration of the multiple factors . . . and the Sentencing Commission is also an expert agency charged by Congress with the task of promulgating guidelines and keeping them up to date." United States v. Jiménez Beltre, 440 F.3d at 518.

As stated before defendant was sentenced on February 28, 2000. The retroactive effect of Booker (2005) in establishing a new rule about the Federal Sentencing Guidelines was not addressed by the Supreme Court, covering solely those cases which were not final when the decision was issued on January 12, 2005. Booker, 125 S.Ct. at 769.  However, the First Circuit has consistently held that petitions under 28 U.S.C. § 2255 are unavailable to advance Booker claims in the absence of a Supreme Court decision rendering Booker retroactive since this would provide an avenue to escape the restrictions Congress has imposed on habeas review.   United States v. Fraser, 407 F.3d 9 (1st Cir.2005); Cirilo-Muñoz, 404 F.3d 527 (1st Cir. 2005).  In this case, the Petitioner's appeal was decided on November 20, 2003, and amended on denial of rehearing on January 22, 2004.  Under the federal sentencing regime then in place, the sentencing court in 2000 was required to impose a guideline sentence.  Indeed when Petitioner was sentenced, the Court was required to follow the sentencing guidelines.

## D. PETITIONER'S "ACTUAL INNOCENCE".

Petitioner Alicea-Torres contends that he is "actually innocent "of the crime for which he was convicted.  See, Petition, PP. 28-29.

Petitioner Alicea-Torres does not seriously contend, nor does he supply any proof, that he is actually innocent. In his Petition, he raises for the first time many frivolous claims which could have been asserted as part of his direct appeal.  These claims fall into categories which may be broadly described as prosecutorial misconduct, constructive amendment of the indictment, improper admission

of hearsay statements, etc.  Accordingly, for the Court to be able to consider these claims, Petitioner

must establish both cause for his failure to raise these claims earlier and prejudice resulting therefrom,

or that he is actually innocent. Bousley, 523 U.S. at 623-24, 118 S.Ct. 1604) ("The Supreme Court

confirmed that the 'actually innocent' standard imposes a higher burden on petitioners than the

''prejudice'' prong in the cause and prejudice standard.").

Petitioner's lengthy submissions utterly fail to make the required showing.  First, Petitioner fails

to proffer any explanation why these claims were not raised on direct appeal.  Second, Petitioner has

not established any prejudice arising out of his failure to assert these claims because he has not shown

a "reasonable probability" that the result on appeal would have been different had they been raised.

Petitioner also has failed to make the alternative showing that he was convicted despite his

alleged actual innocence as a consequence of a constitutional violation.  Petitioner claims "actual

innocence" and indeed, if established, this would overcome the procedural bar to review. However,

Petitioner fails to establish his "actual innocence."  The Supreme Court has reiterated that for a claim

of actual innocence to be credible, it "must be based on reliable evidence not presented at trial."

Calderon v. Thompson, 523 U.S. 538, 559 (1998).  Petitioner faces a two-prong hurdle in establishing

"actual innocence ."  First, he must present new, reliable evidence that was not presented at trial. Such

new evidence could be "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence." Schlup v. Delo, 513 U.S. 298, 324 (1995).  After presenting such new evidence,

Petitioner must then establish that "it is more likely than not that no reasonable juror would have

convicted him in the light of the new evidence." Schlup, 513 U.S. at 327-28;  see also, Bousley, 523

U.S. at 623.  Determining whether no reasonable juror would have found Petitioner guilty "turns upon

an examination of the whole record to ascertain what inferences are reasonable in light of the evidence

presented." <u>Hohn v. United States</u>, 193 F.3d 921, 924 (8th Cir.1999).

Petitioner has failed to present this Court with any new evidence establishing his actual innocence.  In his Petition, he makes repeated statements about counsel's alleged deficiencies.  Nonetheless, the only support for these claims is his own conclusory statements.  This obviously is insufficient to establish that he is actually innocent.

Because Petitioner Alicea-Torres cannot show cause for his failure to raise these claims on direct appeal and prejudice, or actual innocence , they are barred from consideration as part of this collateral review.

### IV. CONCLUSION

It is ordered that Petitioner Eduardo Alicea-Torres' request for habeas relief under 28 U.S.C. §2255 (Docket No. 1) is **DENIED,** and his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255 is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th  of September, 2006.


s/ Daniel R. Domínguez
DANIEL R. DOMÍNGUEZ
United States District Judge